491 So.2d 1109 (1986)
Robert MAKEMSON, et al., Petitioners,
v.
MARTIN COUNTY, Respondent.
No. 66780.
Supreme Court of Florida.
July 17, 1986.
*1110 Robert Makemson and Robert G. Udell, in pro. per.
Michael H. Olenick, County Atty., Stuart, for respondent.
Michael Zelman, Miami, for Florida Criminal Defense Attys. Ass'n and Nat. Legal Aid and Defender Ass'n, amicus curiae.
Robert A. Ginsburg, Dade County Atty., and Eric K. Gressman, Asst. County Atty., Miami, for Metropolitan Dade County, amicus curiae.
ADKINS, Justice.
In Martin County v. Makemson, 464 So.2d 1281 (Fla. 4th DCA 1985), the Fourth District quashed the trial court's order declaring unconstitutional section 925.036, Florida Statutes (1981), and allowing petitioners to be compensated for their representation of an indigent criminal defendant in amounts exceeding the statutory maximum fees. The district court, while upholding the statute's validity, noted that "an absolute fee cap works an inequity in some cases," 464 So.2d at 1283, and certified to this Court four questions as being of great public importance. We have jurisdiction, article V, section 3(b)(4), Florida Constitution, and find the fee maximums unconstitutional when applied to cases involving extraordinary circumstances and unusual representation.
Prior to setting out the certified questions, we turn to the factual predicate on which they were based. Petitioner Robert Makemson, a resident of Martin County, was appointed by the court pursuant to section 925.036 to represent one of four *1111 defendants. The representation spanned a nine-month period, as each defendant had been charged with first-degree murder, kidnapping and armed robbery. Because the victim of the crime was a member of a prominent local family, the entire resources of the prosecutor were brought to bear on the case. Three prosecutors and two special investigators sat at the counsel table, and over one hundred witnesses and fifty depositions were involved in the trial.
After the four cases were severed, each defendant sought and ultimately obtained a change of venue. Petitioner therefore spent his sixty-four hours in court on the case at the Lake County courthouse, some one hundred and fifty miles from his home. Upon completion of the representation, petitioner asked for compensation for the total 248.3 hours spent on the case in an amount based upon a calculation using an hourly rate established by the chief judge of the circuit. While expert testimony established the value of his services at a minimum of $25,000, he asked for and obtained $9,500. Six thousand dollars has been placed in escrow pending disposition of this appeal, as the statute would allow only $3,500 as compensation for the representation. § 925.036(2)(d), Fla. Stat. (1985).
The trial court additionally found it necessary to accept petitioner Robert Udell's low bid of $4,500 as compensation for the representation of the defendant upon appeal although the statute would allow only $2,000. § 925.036(2)(e), Fla. Stat. (1985). The court also set the funds aside prior to the representation, in spite of the statute's terms providing for payment "at the conclusion of the representation." § 925.036(1), Fla. Stat. (1985).
The trial court expressed the dilemma it faced:
[T]his court is confronted with conflicting laws, one of which requires competent counsel for a defendant who has been sentenced to death and the other stating that defense counsel can be paid only $2,000 for his services. The lowest bid for these services was $4,500, which is more than twice what the Legislature has allowed. One of these laws must yield to the other. There is no doubt in the court's mind that the Legislature, if confronted with the problem, would admit that the law requiring competent counsel was paramount and superior to the law allowing a mere $2,000 fee for the dreadful responsibility involved in trying to save a man from electrocution. Therefore this court finds that F.S. 925.036 in setting rigid maximum fees without regard to the circumstances in each case is arbitrary and capricious and violates the due process clause of the United States and Florida Constitutions. See Aldana v. Holub, 381 So.2d 231 (Fla. 1980). In simpler language, the Statute is impractical and won't work.
The trial court additionally found the statute unconstitutional as an impermissible legislative intrusion upon an inherent judicial function. Art. V, § 2; art. III, § 2, Fla. Const. The statute then in force, identical to the present statute, provided as follows:
(1) An attorney appointed pursuant to s. 925.035 or s. 27.53 shall, at the conclusion of the representation, be compensated at an hourly rate fixed by the chief judge or senior judge of the circuit in an amount not to exceed the prevailing hourly rate for similar representation rendered in the circuit; however, such compensation shall not exceed the maximum fee limits established by this section. In addition, such attorney shall be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the court. If the attorney is representing a defendant charged with more than one offense in the same case, the attorney shall be compensated at the rate provided for the most serious offense for which he represented the defendant. This section does not allow stacking of the fee limits established by this section.
(2) The compensation for representation shall not exceed the following:
(a) For misdemeanors and juveniles represented at the trial level: $1,000.

*1112 (b) For noncapital, nonlife felonies represented at the trial level: $2,500.
(c) For life felonies represented at the trial level: $3,000.
(d) For capital cases represented at the trial level: $3,500.
(e) For representation on appeal: $2,000.
§ 925.036, Fla. Stat. (1981).
The Fourth District quashed the trial court's declaration of unconstitutionality and certified to this Court the following four questions:
I. [Is the statute] unconstitutional on its face as an interference with the inherent authority of the court to enter such orders as are necessary to carry out its constitutional authority?
II. If the answer to the first question is negative, could the statute be held unconstitutional as applied to exceptional circumstances or does the trial court have the inherent authority, in the alternative, to award a greater fee for trial and appeal than the statutory maximum in the extraordinary case?
III. If the answer to the second question is affirmative, should the trial court have awarded an attorney's fee above the statutory maximum for proceedings at the trial level, given the facts presented to it by trial counsel by his petition and testimony?
IV. If the answer to the second question is affirmative, should the trial court have awarded an attorney's fee above the statutory maximum for proceedings at the appellate level before the services were rendered and with the facts known to it at the time of the award?
464 So.2d at 1283-86.
We answer the first question in the negative and the remaining questions in the affirmative. While we cannot find the statute facially unconstitutional, as it is ordinarily well within the legislature's province to appropriate funds for public purposes and resolve questions of compensation, article III, section 12, Florida Constitution; State ex rel. Caldwell v. Lee, 27 So.2d 84 (Fla. 1946); State v. Ruiz, 269 Ark. 331, 602 S.W.2d 625 (1980), we find that the statutory maximum fees, as inflexibly imposed in cases involving unusual or extraordinary circumstances, interfere with the defendant's sixth amendment right "to have the assistance of counsel for his defence." The statute, as applied to many of today's cases, provides for only token compensation. The availability of effective counsel is therefore called into question in those cases when it is needed most.
Although facially valid, we find the statute unconstitutional when applied in such a manner as to curtail the court's inherent power to ensure the adequate representation of the criminally accused. At that point, the statute loses its usefulness as a guide to trial judges in calculating compensation and becomes an oppressive limitation. As so interpreted, therefore, the statute impermissibly encroaches upon a sensitive area of judicial concern, and therefore violates article V, section 1, and article II, section 3 of the Florida Constitution. As eloquently expressed by Indiana's Supreme Court in Carlson v. State ex rel. Stodola, 247 Ind. 631, 633-34, 220 N.E.2d 532, 533-34 (1966):
The security of human rights and the safety of free institutions require freedom of action on the part of the court ... Our sense of justice tells us that a court is not free if it is under financial pressure, whether it be from a city council or other legislative body ... One who controls the purse strings can control how tightly those purse strings are drawn, and the very existence of a dependent.
More fundamentally, however, the provision as so construed interferes with the sixth amendment right to counsel. In interpreting applicable precedent and surveying the questions raised in the case, we must not lose sight of the fact that it is the defendant's right to effective representation rather than the attorney's right to fair compensation which is our focus. We find the two inextricably interlinked.
*1113 While in our decision of Metropolitan Dade County v. Bridges, 402 So.2d 411 (Fla. 1981), the majority found the statute mandatory rather than directory in its fee limits and constitutional, each member of the Court expressed the conviction that such an interpretation, as applied in certain circumstances, would intrude upon sixth amendment rights. Even the majority noted that:
Unless it is demonstrated that the maximum amounts designated for representation in criminal cases by section 925.036 are so unreasonably insufficient as to make it impossible for the courts to appoint competent counsel to represent indigent defendants, we cannot say that section 925.036 violates the sixth amendment right to counsel.
402 So.2d at 414-45.
In Rose v. Palm Beach County, 361 So.2d 135 (Fla. 1978), we invoked the doctrine of inherent judicial power in order to declare statutory maximums on witness compensation and travel expenses directory rather than mandatory. While noting that the doctrine should be invoked only in situations of clear necessity, we held that "if the statute is deemed to establish an absolute maximum in all situations, then it must be said to improperly infringe the prerogative of the court in effectuating the constitutional right to compulsory process." 361 So.2d at 135.
Having approached the instant question with due caution, we must once again affirm the proposition that "the courts have authority to do things that are absolutely essential to the performance of their judicial functions," Id., for we must find that the sixth amendment's guarantee of effective assistance of counsel at least equals in fundamentality and importance its sister provision setting forth the right of the accused "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. We can do no less than to zealously safeguard each.
We find that the trial court has here met its burden of showing that its action in exceeding the statutory maximums was necessary in order to enable it to perform its essential judicial function of ensuring adequate representation by competent counsel. Wakulla County v. Davis, 395 So.2d 540 (Fla. 1981). Thus, we answer the third question certified affirmatively; the facts were sufficiently "extraordinary" to warrant the action taken.
A survey of the repeated attacks on the validity of the statute highlights the strong tension between the counties' treasuries, as protected by the statutory maximum fees, and the attorneys seeking compensation more fair than that the legislature would grant. As previously pointed out, we must focus upon the criminal defendant whose rights are often forgotten in the heat of this bitter dispute. In order to safeguard that individual's rights, it is our duty to firmly and unhesitatingly resolve any conflicts between the treasury and fundamental constitutional rights in favor of the latter. As we noted in City of Tallahassee v. Public Employees Relations Commission, 410 So.2d 487, 490 (Fla. 1981), "[t]he unconstitutionality of a statute may not be overlooked or excused for reasons of inconvenience." This ruling may indeed require some financial adjustment in the counties' budgeting process, and the exploration of some alternatives. We note, however, that the counties' fears may be in part misplaced. Petitioners seek only "reasonable," and not "market value" compensation. Token compensation is no longer to be an alternative.
We find that a significant pattern emerges upon examining the caselaw involving the statute's validity. It has long been the trial courts, most intimately aware of the complexity of the case and the effectiveness of counsel, which have time after time found the statute unconstitutional in order to exceed its guidelines and award a fee more nearly approaching fairness. Until this opinion, these courts have been continually reversed upon appeal. See, e.g., Wakulla County v. Davis, 395 So.2d 540 (Fla. 1981); Broward County v. Wright, 420 So.2d 401 (Fla. 4th DCA 1982); Dade County v. Strauss, 246 So.2d 137 (Fla. 3d *1114 DCA 1971), cert. denied, 253 So.2d 864 (Fla. 1971), cert. denied, 406 U.S. 924, 92 S.Ct. 1793, 32 L.Ed.2d 125 (1972). We can no longer afford to ignore the message these courts have been attempting to send.
Respondent Martin County refers us to precedent emphasizing the lawyer's common law duty to represent the indigent for no compensation, In interest of D.B. and D.S., 385 So.2d 83 (Fla. 1980); and referring to service at the statutory fee rate as a form of pro bono public service to the poor in criminal proceedings. Broward County v. Wright. These cases, in our view, fail to address the true concerns in issue. First, we may not allow the guarantee of effective representation in today's courtrooms to be diluted by reference to the state of affairs at the common law.
Second, even if the statute as presently implemented may be viewed as a form of pro bono service, it is an extremely haphazard and unfairly imposed system in practice. When the United States Supreme Court, in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), found fundamental the right to effective counsel and established the state's duty to provide representation to the indigent, it by no means intended to place the weight of this duty upon the shoulders of a few individual practitioners appointed by the court. The system as it presently stands forces these individuals, in the most difficult cases, to bear a burden which is properly the state's with only token compensation for their efforts. As noted in the dissent in MacKenzie v. Hillsborough County, 288 So.2d 200, 202 (Fla. 1973):
No citizen can be expected to perform civilian services for the government when to do so is clearly confiscatory of his time, energy and skills, his public service is inadequately compensated, and his industry is unrewarded ... I do not believe that good public conscience approves such shoddy, tawdry treatment of an attorney called upon by the courts to represent an indigent defendant in a capital case.
We simply cannot on the one hand instruct the bench and bar, as we did in Wilson v. Wainwright, 474 So.2d 1162, 1165 (Fla. 1985), that "[a] perfunctory appointment of counsel without consideration of counsel's ability to fully, fairly and zealously advocate the defendant's cause is a denial of meaningful representation which will not be tolerated," and at the same time deny the courts the ability to exceed the fee limits when necessary to do justice.
Certain pressing realities facing practitioners in today's courts can no longer be ignored. First, the increasing complexity of some of today's cases calls for the investment of more time and effort in order to effectively represent one's client. These complexities also raise the spectre of later claims of ineffective assistance of counsel, which in certain types of cases may be expected to be eventually raised regardless of any factual basis for the claim. Practicing attorneys are aware how such claims, even if found meritless, may adversely impact upon one's hard-bought professional reputation.
Second, rising costs must be figured into the equation. While the statute allows for the reimbursement of expenses reasonably incurred, section 925.036(1), Florida Statutes (1985), the statutory fee will in many instances be insufficient to cover even overhead expenses during the proceeding. The legislature's amendments to the statute in chapter 81-273, Laws of Florida (1981) make clear its compromise addressing the issue of adequate compensation. This amendment deleted the provision allowing "reasonable compensation" in capital cases, section 925.035(1), Florida Statutes (1979), and raised the statutory fee limits. The fee limits presently in force stand too far from fair compensation, as applied to certain cases, to be allowed to stand. The link between compensation and the quality of representation remains too clear. See the dissent in Mackenzie, 288 So.2d at 202 ("The adage that `you get what you pay for' applies not infrequently. In our pecuniary culture the calibre of personal services rendered usually has a corresponding relationship to the compensation *1115 provided."); Gideon v. Wainwright, 372 U.S. at 344, 83 S.Ct. at 796 ("[T]here are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defense.").
Finally, we answer the fourth question certified. Because the trial judge found it necessary to accept a bid exceeding the statutory limit in order to ensure representation upon appeal, he acted within his authority in doing so. Because the statute does, however, provide for compensation "at the conclusion of the representation," we note that in light of this opinion trial courts should not in the future need to determine the compensation to be paid prior to the representation in order to obtain competent counsel.
In summary, we hold that it is within in the inherent power of Florida's trial courts to allow, in extraordinary and unusual cases, departure from the statute's fee guidelines when necessary in order to ensure that an attorney who has served the public by defending the accused is not compensated in an amount which is confiscatory of his or her time, energy and talents. More precise delineation, we believe, is not necessary. Trial and appellate judges, well aware of the complexity of a given case and the attorney's effectiveness therein, know best those instances in which justice requires departure from the statutory guidelines. We recede from that portion of Bridges which is inconsistent with this opinion, and, in sum, find the statute directory rather than mandatory in nature.
We therefore quash the Fourth District's quashal of the trial court's order granting just compensation for petitioners' services in this case.
It is so ordered.
BOYD, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
McDONALD, C.J., concurs in result only.