537 So.2d 1376 (1989)
John Thor WHITE, Petitioner,
v.
BOARD OF COUNTY COMMISSIONERS OF PINELLAS COUNTY, Respondent.
No. 72170.
Supreme Court of Florida.
January 26, 1989.
*1377 John Thor White, St. Petersburg, in pro. per.
John E. Schaefer, Asst. Co. Atty., Clearwater, for respondent.
William J. Roberts, Gen. Counsel, Tallahassee, amicus curiae for Florida Ass'n of Counties, Inc.
KOGAN, Justice.
We have for review White v. Board of County Commissioners, 524 So.2d 428 (Fla. 2d DCA 1988), based on express and direct conflict with Makemson v. Martin County, 491 So.2d 1109 (Fla. 1986), cert. denied, 479 U.S. 1043, 107 S.Ct. 908, 93 L.Ed.2d 857 (1987). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Petitioner John Thor White was court-appointed counsel in a first-degree murder case. After conclusion of the case, Mr. White filed a petition with the circuit court requesting attorney's fees in excess of the statutory maximum of $3,500 set forth in section 925.036(2)(d), Florida Statutes (1985). At the fee petition hearing the parties stipulated that Mr. White had expended a total of 134 reasonable and necessary hours, including 63 hours in court, over a period of 3 1/2 months representing his client. It was also noted that Mr. White had substantial prior experience in capital cases and had displayed exceptional expertise during the trial.
Although an expert witness testified that an appropriate fee would be $12,135, Mr. White requested attorney's fees of $50 per/hour totaling $6700. This rate conformed with the hourly rate set by the chief judge of the circuit pursuant to section *1378 925.036(1), Florida Statutes (1985). In its order, the trial court expressed concern over the difficulty of securing competent, effective counsel to handle capital cases at the current statutory fee levels. It recognized that in an attempt to alleviate this problem, this Court in Makemson permitted the $3,500 statutory maximum fee cap to be exceeded in extraordinary and unusual circumstances. However, the trial court held that Mr. White's case was not sufficiently "complex" to meet that standard. As a result, fees were limited to the $3,500 statutory cap. The Second District Court of Appeal denied Mr. White's petition for certiorari and affirmed the trial court's decision, finding that the trial court had not departed from the essential requirements of law in either substance or procedure.
In our opinion in Makemson, we addressed the constitutionality of section 925.036(2)(d), Florida Statutes (1985). Although we held the statute to be facially valid, we found the statute unconstitutional when applied in such a manner as to curtail the court's inherent power to ensure the adequate representation of the criminally accused. 491 So.2d at 1112. We then exercised the inherent power of the court to interpret the statute as directory, not mandatory, and awarded attorney's fees in excess of the $3,500 cap. Id. at 1115.
The issue now presented concerns the proper interpretation of the decision of this Court in Makemson. The court-appointed counsel in Makemson expended 248 hours, including 64 hours in court, representing his client in what was termed a "high profile" and "heavily prosecuted" capital case. This court upheld the trial court fee award of $9,500 and stated:
[I]t is within the inherent power of Florida's trial courts to allow, in extraordinary and unusual cases, departure from the statute's fee guidelines when necessary in order to ensure that an attorney who has served the public by defending the accused is not compensated in an amount which is confiscatory of his or her time, energy and talents. More precise delineation, we believe, is not necessary.
Makemson, 491 So.2d at 1115. We find that all capital cases by their very nature can be considered extraordinary and unusual and arguably justify an award of attorney's fees in excess of the current statutory maximum fee cap. Thus we must determine the circumstances under which the judiciary should exercise its inherent power and exceed the statutory maximum fee cap in order to award compensation in an amount which is reasonable in light of an attorney's professional obligation to provide services to the indigent and not "confiscatory of his or her time, energy, and talents."
The basis for a court's exercise of its inherent power was set forth by this Court in Rose v. Palm Beach County, 361 So.2d 135, 137 (Fla. 1978):
The doctrine of inherent judicial power as it relates to the practice of compelling the expenditure of funds by the executive and legislative branches of government has developed as a way of responding to inaction or inadequate action that amounts to a threat to the court's ability to make effective their jurisdiction. The doctrine exists because it is crucial to the survival of the judiciary as an independent, functioning and co-equal branch of government. The invocation of the doctrine is most compelling when the judicial function at issue is the safe-guarding of fundamental rights.
(Footnotes omitted.) Judge Lehan in his dissent in White suggests that the court may exercise its inherent power to depart from the statutory maximum "[w]hen legislatively-fixed attorney's fees become so out of line with reality that they materially impair the abilities of officers of the courts to fulfill their roles of defending the indigent and curtail the inherent powers of the courts to appoint attorneys to those roles." 524 So.2d at 431 (Lehan, J., dissenting). We agree and find that the point for departure from the statutory maximum has been reached under the circumstances of this case. Indeed, we are hard pressed to find any capital case in which the circumstances would not warrant an award of attorney's fees in excess of the current statutory fee cap.
*1379 The trial court has correctly observed that "it is patently clear that the statutory limitations are, in this day and age, unrealistic." However, because it is within the legislature's province to appropriate funds for public purposes and resolve questions of compensation, article III, section 12, Florida Constitution; State ex rel. Caldwell v. Lee, 157 Fla. 773, 27 So.2d 84 (1946), we decline to declare the statute unconstitutional on its face.[1] The statute is unconstitutional when applied in such a manner that curtails the court's inherent power to secure effective, experienced counsel for the representation of indigent defendants in capital cases. At that point the statute impermissibly encroaches upon a sensitive area of judicial concern and violates article V, section 1, and article II, section 3, of the Florida Constitution.
We recognize that every attorney has a common law professional obligation to provide services for indigents. It may be that the legislature intended the statutory cap to be a form of this pro bono obligation. 491 So.2d at 1114. In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court established that each state has the obligation under the Constitution to provide legal representation for indigents. Thus, after Gideon, dual obligations arose regarding the representation of indigents in criminal cases: the constitutional obligation of the state created under Gideon and the ethical obligation of the attorney that accompanies the profession. When an attorney is called upon by the state to represent an indigent defendant in a criminal case, not only is the attorney expected to provide legal services as part of his or her professional ethical obligation, but the state, as part of its constitutional obligation, must reasonably compensate the attorney for those services.
In this case, an award of attorney's fees capped by the statutory maximum equals a fee of to $26.12 per/hour ($3500  134 hrs.). This fee is far from reasonable compensation for the attorney who, in the words of the Makemson trial court, has "the dreadful responsibility of trying to save a man from electrocution." 491 So.2d at 1111. As Justice Ervin said in his dissent in MacKenzie v. Hillsborough County, 288 So.2d 200, 202 (Fla. 1973) (Ervin, J., dissenting), which this Court approved in Makemson:
No citizen can be expected to perform civilian services for the government when to do so is clearly confiscatory of his time, energy and skills, his public service is inadequately compensated, and his industry is unrewarded.
... .
I do not believe that good public conscience approves such shoddy, tawdry treatment of an attorney called upon by the courts to represent an indigent defendant in a capital case.
However, if the statutory cap is exceeded and fees awarded based upon the local prevailing hourly rate for indigent cases, the compensation would be "reasonable" and would then balance the state's constitutional obligation and the attorney's ethical obligation.
We are mindful of the potential burden placed on county treasuries as a result of departure from the statutory maximum fee cap. However, since the State of Florida enforces the death penalty, its primary obligation is to ensure that indigents are provided competent, effective counsel in capital cases. As this Court stated in Makemson:
In order to safeguard the individual's rights, it is our duty to firmly and unhesitatingly resolve any conflicts between the treasury and fundamental constitutional rights in favor of the latter.
491 So.2d at 1113.
It must be remembered that an indigent defendant's right to competent and effective representation, not the attorney's right to reasonable compensation, gives rise to the necessity of exceeding the statutory *1380 maximum fee cap. Id. at 1112. The relationship between an attorney's compensation and the quality of his or her representation cannot be ignored. It may be difficult for an attorney to disregard that he or she may not be reasonably compensated for the legal services provided due to the statutory fee limit. As a result, there is a risk that the attorney may spend fewer hours than required representing the defendant or may prematurely accept a negotiated plea that is not in the best interests of the defendant. A spectre is then raised that the defendant received less than the adequate, effective representation to which he or she is entitled, the very injustice appointed counsel was intended to remedy.
In determining whether to exceed the statutory maximum fee cap, the focus should be on the time expended by counsel and the impact upon the attorney's availability to serve other clients, not whether the case was factually complex. An increasing number of capital cases may be considered "routine" yet still involve an expenditure of the attorney's time, energy, and talents that is disproportionate to the current statutory maximum allowable fee. Due to the bifurcated nature of a capital case, counsel is actually representing the defendant in not one but two separate trials. Thus, as Judge Lehan recognizes in his dissent, "the time expended in a capital case may well become unusual and extraordinary in comparison with other criminal cases, regardless of whether the case is `complex.'" White, 524 So.2d at 433.
According to this Court in Makemson, the statutory maximum fee cap can only be exceeded "when applied to cases involving extraordinary circumstances and unusual representation." 491 So.2d at 1110. We find that virtually every capital case fits within this standard and justifies the court's exercise of its inherent power to award attorney's fees in excess of the current statutory fee cap. Capital cases require an extraordinary and unusual amount of time, energy, and effort by counsel relative to the time for which the statutory cap would provide reasonable compensation. Due to the bifurcated nature of the proceedings, the increased cost of living since the statute was last amended, the amount of time and effort the attorney must expend, and the severity of the penalty faced by the defendant, a trial court must be allowed to award fees in excess of the statutory maximum when appropriate.
In this case, Mr. White suffered a double forfeiture as a result of his representation of an indigent client on behalf of the state. Not only did he receive token compensation for his efforts, but his private practice suffered as a result of his service in this case. This double forfeiture serves to magnify the inequity of enforcing the statutory maximum fee cap. Clearly this is the type of situation that this Court in Makemson was attempting to avoid. Such conditions will undoubtedly prevent or discourage Mr. White and others like him from representing indigent defendants on behalf of the state in the future. We will not allow the court's inherent power to be curtailed in a manner which will affect the court's ability to secure competent, experienced counsel to represent indigent defendants in capital cases.
We therefore quash the Second District Court of Appeal's affirmance of the trial court decision and remand this case to the trial court to award fees in accordance with this opinion.
It is so ordered.
EHRLICH, C.J., and McDONALD, SHAW, BARKETT and GRIMES, JJ., concur.
OVERTON, J., concurs specially in result only with an opinion.
OVERTON, Justice, specially concurring in result.
The legislature should recognize the considerable fiscal impact the majority's opinion will have on the counties of this state. Both the trial judge and the district court of appeal applied our previous Makemson decision as it was written and intended to be applied. The majority opinion now modifies Makemson by effectively classifying all capital cases as "unusual and extraordinary."
*1381 The increased fiscal impact on a number of counties will result because some have already assumed the financial burden of providing defense counsel in almost all death penalty cases. This situation has arisen due to inadequate personnel and funding of these counties' public defender offices. Almost all defendants in capital cases in Dade, Broward, and Palm Beach counties are represented by appointed private counsel paid by the counties pursuant to a court order. A number of other counties are also now providing private counsel for some of their death penalty cases. In my view, the state should assume these defense costs since it is unfair to burden only some counties in the state in this manner. We must devise a more equitable and fiscally efficient means of providing counsel in death penalty cases.
NOTES
[1] We emphasize that capital cases have become increasingly complex. Further, as the Second District Court recognized, there has been a 21% increase in the cost of living since the statute was last amended in 1981. We urge the legislature to reexamine the statute in light of these and other considerations stated in this opinion.