586 So.2d 1163 (1991)
MARION COUNTY, Florida, Appellant,
v.
Michael JOHNSON, et al., Appellees.
No. 90-752.
District Court of Appeal of Florida, Fifth District.
September 5, 1991.
Rehearing Denied October 18, 1991.
*1164 Stephen P. Lee, Marion County Atty., and Randall R. Moring, Asst. County Atty., Ocala, for appellant.
Michael W. Johnson, Ocala, for appellees.
PETERSON, Judge.
Marion County appeals the trial court's order requiring it to pay to Michael Johnson attorney's fees of $22,960.22 and costs of $2,579. The trial court appointed Johnson to act as attorney ad litem for a minor child in a dependency action brought by the Department of HRS. Most of the facts of this case are summarized in Department of Health and Rehabilitative Services v. Cole, 574 So.2d 160 (Fla. 5th DCA 1990). Additional facts indicate that originally HRS initiated the dependency action based upon allegations by the mother that the father was guilty of sexually abusing the child. The proceedings were delayed as a result of the mother's defiance of court orders to relinquish custody after hiding the child from the court, the father, and all governmental agencies. It was learned subsequently that the child had been sexually abused during the time the mother was hiding the child and that the abuser was not the father.
The action was commenced in October 1988, and Johnson was appointed attorney ad litem on August 31, 1989, with orders from the trial court to "expend whatever efforts were necessary to locate the child which had been secreted by the mother and whose whereabouts were unknown by the court." Johnson was further ordered to represent the child in subsequent proceedings and was assured by the court of compensation for his services. Prior to the appointment of Johnson as attorney ad litem, the trial court had ordered the state attorney, the guardian ad litem program, and individual co-guardians ad litem to represent the interests of the child.
This case is extraordinary, but the description is one that the trial judge probably would describe as an understatement. This case and the companion child custody case are practically indistinguishable and have produced at least six appeals. The trial judge stated that the case kept him awake at night and, during a hearing on the award of Johnson's fees, stated:
THE COURT: I tell you, I wouldn't have done what you did for twice that. This case was  in the thirty years that I have been practicing  and everybody else said  there has never been a case like this around here. The publicity ... that was manufactured was unbelievable. It put the entire judiciary system on trial, rather than the issues that should have been tried.
... I hope I never have another case like it  I'll tell you that.
... I want the record to understand that this is not a run-of-the-mill case. The County  everybody understands that.
The media, to begin with  until they knew the facts  the judiciary was on trial in the case  not me, the judiciary. Our whole system of government  or our whole system of courts deciding matters was on trial here.
* * * * * *
... So, it amounts to twenty-two thousand nine hundred and something. Okay. Hopefully, we didn't ruin your practice while you were engaged in this case.
*1165 The trial court's description of the case resulted primarily from the mother's defiance of court orders and her continuous use of the media to publicize her attacks on the courts and on her former husband. Most important was the absence of the child, A.H., the subject matter of both suits, who was secreted by the mother and who could not be found by HRS. The case was also unusual in that the court, concerned about the continued custody of the child after she was found, assigned Johnson the additional duty of custodian of the child while the lawsuit was pending even though HRS has the primary duty to provide protective services to children in need of protection. § 415.509(1)(a)4, Fla. Stat.; see In Interest of M.P., 453 So.2d 85 (Fla. 5th DCA 1984), rev. denied, 472 So.2d 732 (Fla. 1985), which construed subsections 827.07(11) and 827.07(16), Florida Statutes (1981), now sections 415.508 and 415.509.
The only meritorious issues raised in this appeal are the determination of the agency or persons who must bear the burden of the rather significant fees and costs and whether a statutory cap exists to limit those fees. Four possibilities exist as to who must pay the fees:
1. The parents, pursuant to section 415.508(2), Florida Statutes (1989).
2. HRS, pursuant to the decisions in In Interest of M.P.; In Interest of C.T., 503 So.2d 972 (Fla. 4th DCA 1987); Department of Health & Rehabilitative Services v. A.H., 459 So.2d 417 (Fla. 1st DCA 1984); In Interest of R.W., 409 So.2d 1069 (Fla. 2d DCA 1981), rev. denied, Department of Health & Rehabilitative Services v. C.C., 418 So.2d 1279 (Fla. 1982).
3. Marion County, pursuant to the trial court's order. In Interest of D.B., 385 So.2d 83 (Fla. 1980).[1]
4. Attorney Johnson, who would bear his own fees and costs if he remains unpaid. C.T.; State ex rel. Dep't of Health & Rehabilitative Services v. Nourse, 489 So.2d 1214 (Fla. 4th DCA 1986); Florida Dep't of Health & Rehabilitative Services v. R.M.A., 327 So.2d 844 (Fla. 1st DCA 1976).

ATTORNEY AD LITEM VERSUS GUARDIAN AD LITEM
Before beginning the determination of who must bear the burden of Johnson's fees and costs and whether a limitation as to amount exists, it seems appropriate to find authority for his appointment as attorney ad litem rather than as guardian ad litem. Authority for the appointment of a guardian ad litem is found in section 415.508(1), Florida Statutes, and rule 8.590, Florida Rules of Juvenile Procedure. See also §§ 61.401-.403, Fla. Stat. (Supp. 1990). But no express authority exists for appointment of an attorney ad litem. In fact, the Florida Supreme Court held in D.B., 385 So.2d at 91, that there is no constitutional right to counsel for a child in a juvenile proceeding. Nevertheless, loose language exists in case law, statutes, and rules that would lead one to believe that in some circumstances counsel for a child can be provided in a dependency proceeding. D.B., at 91 (Trial judge may use his historical authority to provide legal assistance.); § 39.002(8), Fla. Stat. (1989) (It is the goal of the legislature that children of the state be provided with an independent, trained advocate when intervention is necessary, as well as a skilled guardian or caretaker when alternative placement is necessary.); § 39.402(11), Fla. Stat. (1989) (Child shall not be held in a shelter on a dependency petition more than twenty-one days, excluding periods of delay resulting from a continuance at the request of or with the consent of the child's counsel.); § 39.406, Fla. Stat. (1989) (Prior to an adjudicatory hearing, child or parent shall be advised by the court of his right to counsel.); Fla.R.Juv.P. 8.590 (1984), committee comments (The appointed guardian ad litem represents the best interests of the child as opposed to representing the child within the context of counsel/client relationships.); § 39.415, Fla. Stat. (1989) (If counsel is entitled to receive compensation for representation pursuant to court-appointment in a dependency *1166 proceeding, such compensation shall not exceed $1,000 at the trial level and $2,500 at the appellate level.). These provisions do not state whether an attorney ad litem should be appointed for the child, and needless to say, they are not helpful in determining who should pay once the services ordered by the trial court are rendered on behalf of the child.
In addition to the language in D.B. declaring that a child has no constitutional right to counsel, and despite the various loose statutory references to a child's right to counsel in a dependency proceeding, a specific limitation exists as to the appointment of an attorney ad litem. The Florida Supreme Court established the guardian ad litem program on February 7, 1985, by administrative order. That order contains a regulation restricting appointment of counsel in standard 1.7(3): "Circuits shall not appoint other attorneys in addition to the guardian ad litem unless a request is filed by the program or the child has other matters which require representation independent of the guardian ad litem." Administrative Order In Re State of Florida Guardian Ad Litem Program, Minimal Standards of Operation (February 18, 1985).[2]

COMPENSATION TO ATTORNEY AD LITEM
Under section 39.415, Florida Statutes, compensation to appointed counsel is limited to $1,000 at the trial level and $2,500 at the appellate level. While the amount of compensation is precisely set forth, the source of the payment is not. It should be the job of the legislature to define the source of payment for personnel to carry out its statutorily mandated dependency proceedings, but it has avoided doing so. The judiciary has had to fill the legislative vacuum when presented with the problem.
This court interpreted the rule established by the Florida Supreme Court in D.B. as requiring a county to pay counsel fees where appointment is constitutionally required. M.P., 453 So.2d 85. This court reasoned in M.P. that, since there is no constitutional right to counsel for a child in a juvenile dependency proceeding, and since HRS has primary responsibility for improving prevention and treatment efforts for child abuse and neglect,[3] HRS was responsible for payment of the attorney's fees. In C.T., 503 So.2d 972, the fourth district followed M.P. where attorneys apparently were appointed to serve the dual roles of attorney ad litem and guardian ad litem in juvenile dependency proceedings. The court held that HRS, rather than St. Lucie County, was required to pay the fees incurred prior to July 1, 1985, the effective date of the supreme court's administrative order creating the guardian ad litem program. The court further held that no fees were payable to the attorneys who performed services in cases filed subsequent to that date; HRS and the county were not responsible for the fees because they had not requested the appointments.
In a later case, the fourth district affirmed a trial court's order assessing attorney's fees against Indian River County for court-appointed counsel representing a disabled adult ward under section 415.105(3), Florida Statutes (Supp. 1986). In Re Skinner, 541 So.2d 781 (Fla. 4th DCA 1989). The court was unwilling to distinguish between constitutionally mandated counsel and statutorily mandated counsel. As authority, the court invoked section 43.28, Florida Statutes, which had been invoked in D.B. to award fees to constitutionally required counsel. In Skinner, the court did not mention C.T., an earlier case in which it had declined to assess fees against St. Lucie County. The Skinner court also attempted to distinguish M.P. and R.W., 409 So.2d 1069, by saying that "the courts [in these cases] seem to indicate that legal counsel was not legally required to be appointed." *1167 Skinner, 541 So.2d at 782, n. 1. However, M.P. specifically indicated, "In this situation, the appointment of a guardian ad litem is a legislative requirement, and the prime responsibility for carrying out this requirement has been placed on [HRS]." M.P., at 87. The legislative requirement referred to in M.P. was section 827.07(16), Florida Statutes (1981), now section 415.508(1), Florida Statutes (1989).
In D.B., the supreme court's rationale for imposing the burden of attorney's fees on counties when appointment was constitutionally mandated was that section 43.28, Florida Statutes, requires counties to furnish personnel necessary to operate the courts unless the personnel are provided by the state. In dependency cases, the state provides necessary personnel for the proceedings through HRS, the state attorney's office, and the guardian ad litem program. What must occur when personnel furnished by the state lapse into inactivity and fail to perform their duties? To find A.H., the state had furnished HRS co-guardians ad litem and others necessary to protect the interests of the child. The trial court appointed Johnson only when the child was not brought before the court by those personnel and when it reasonably concluded that resolution of the dependency proceeding required discovery of the secreted child. While Johnson had been appointed as attorney ad litem, in substance, he was performing the duties and carrying out the responsibilities of a guardian ad litem. Had HRS performed its obligation to protect the child by first locating it, Johnson's appointment would not have been necessary as an act of final resort by a frustrated court. Johnson's subsequent activities relieved HRS from devoting funds and personnel to tasks statutorily imposed upon it.
The costs of substitute personnel necessitated by the inaction of state personnel should not be visited upon Marion County. Judicial approval of payment by a county for substitute personnel when state personnel fail to perform legislatively mandated duties would further extend the current trend of shifting the costs of large government mandates to local government. HRS is charged with the duty to protect the interests of the child, a duty which in this case included finding the child, and to the extent HRS failed to perform the legislatively mandated duties, it should bear the expense of substitute personnel.

STATUTORY CAP
We now turn to the issue of the amount HRS must pay to Johnson for the costs and fees awarded by the trial court. Section 39.415, Florida Statutes (1989), provides:
Appointed counsel; compensation.  If counsel is entitled to receive compensation for representation pursuant to court appointment in a dependency proceeding, such compensation shall not exceed $1,000 at the trial level and $2,500 at the appellate level.
Early attempts by the trial courts to ignore statutory caps on attorney's fees were reversed on appeal. See, e.g., Wakulla County v. Davis, 395 So.2d 540 (Fla. 1981); Broward County v. Wright, 420 So.2d 401 (Fla. 4th DCA 1982); Dade County v. Strauss, 246 So.2d 137 (Fla. 3d DCA 1971), cert. denied, 253 So.2d 864 (Fla. 1971), cert. denied, 406 U.S. 924, 92 S.Ct. 1793, 32 L.Ed.2d 125 (1972). The supreme court acted upon those messages from the trial courts in Makemson v. Martin County, 491 So.2d 1109 (Fla. 1986), cert. denied, 479 U.S. 1043, 107 S.Ct. 908, 93 L.Ed.2d 857 (1987), wherein it allowed attorney's fees in excess of the cap prescribed by section 925.036, Florida Statutes (1985). The award had been made to an attorney appointed to represent a criminal defendant charged with first-degree murder, kidnapping, and armed robbery. The allowance was extended by the second district in Board of County Commissioners of Hillsborough County v. Scruggs, 545 So.2d 910 (Fla. 2d DCA 1989), when fees exceeding the cap of $1,000 prescribed by section 39.415, Florida Statutes, were awarded to counsel for a mother in a dependency proceeding. Further guidelines were established by the supreme court in White v. Board of County Commissioners of Pinellas County, 524 So.2d 428 (Fla. 2d DCA 1988), quashed on other grounds, 537 So.2d 1376 *1168 (Fla. 1989), to assist in making the determination as to when statutory caps may be exceeded: "In determining whether to exceed the statutory maximum fee cap, the focus should be on the time expended by counsel and the impact upon the attorney's availability to serve other clients, not whether the case was factually complex."
We conclude that the instant case falls within the purview of the guidelines in White and the language in Makemson that the statutory maximum fee can only be exceeded "when applied to cases involving extraordinary circumstances and unusual representation." White, 537 So.2d at 1380, quoting Makemson, 491 So.2d at 1110. For this conclusion, we are assisted by the trial court's comments about this most unusual case, including the court's comments about Johnson's exemplary performance and the demands of the case upon his practice. Johnson should be compensated in excess of the statutory cap in view of those descriptions by the trial judge. We are mindful, as we have noted, of the fact that counsel for the child was not constitutionally required. We also find, however, that Johnson is entitled to the compensation promised by the court. D.B.; M.P.
We are not unmindful of the supreme court's reminder in D.B. to the attorneys of this state of their obligation to perform pro bono work. We believe that Johnson has contributed his share to this case by devoting 122.46 pro bono hours out of 306.15 total hours expended on behalf of the minor child. Johnson's fees were calculated pursuant to the 60%/40% "Rush Formula" utilized in D.B. to set the rate for court-appointed counsel in dependency proceedings. Johnson continues to devote nonproductive time to these proceedings in this appeal and has lost the use of $2,579 that he seeks for costs advanced.

IN FUTURO
It should not be inferred from this decision that appellate courts will prevent embarrassment to a judge who, without careful consideration of the authority therefor, promises compensation to an appointee attorney or guardian ad litem. The facts of this case and the immeasurable pressure upon the trial judge created a most unusual circumstance. It is our impression that the trial judge was almost pleading for assistance when he appointed Johnson and committed to rewarding him with appropriate attorney's fees for his services. The appellate courts heretofore have had a tendency to uphold such commitments. D.B., 385 So.2d at 93; M.P., 453 So.2d at 89; but see Nourse, 489 So.2d 1214; C.T., 503 So.2d 972. But the appointment of attorneys, the amount of their compensation, and whether there is a legal basis for making the award must be carefully considered. Routh v. Routh, 565 So.2d 709 (Fla. 5th DCA 1990). The legislative and executive branches of Florida government are currently struggling with ways to finance operations. The judicial branch must assist by adopting a similar fiscal responsibility. Trial judges can play a large part in reducing the cost of providing lawyers or guardians ad litem to indigents when appointments are constitutionally or statutorily required. The supreme court recognized the need to limit the appointment of counsel in dependency proceedings when it issued its administrative order creating the minimal standards of operation for the guardian ad litem program. Trial courts were given notice under standard 1.7 not to appoint other attorneys except under certain circumstances. In Routh, we suggested to trial courts that assurances of payment to appointees should not be made unless the source of payment is considered before appointment. Failure to do so can be embarrassing as were the results in Nourse and in C.T. where the fee awards were dishonored. It is suggested that post-appointment embarrassment might be avoided if pre-appointment conferences or hearings are conducted with those agencies the trial court believes will ultimately bear the burden of the costs and fees incurred by the appointee.
While we reverse the trial court's assessment of fees and costs against Marion County and direct that the assessment be made against HRS, we remand for a determination whether the child's parents are *1169 financially able to make reimbursement and, if so, for entry of an appropriate judgment for all or a part of Johnson's costs and fees.
REVERSED and REMANDED.
GOSHORN, C.J., and FOWLER, R.J., Associate Judge, concur.
NOTES
[1] If Johnson's appointment were a constitutional requirement, the holding in D.B. would apply.
[2] We assume that this means that the director of the program, rather than the program, would make such a request if an attorney's services are needed. See Department of Health & Rehabilitative Services v. Cole, 574 So.2d 160 (Fla. 5th DCA 1990).
[3] § 415.509(1)(a), Fla. Stat. 1989.