WALLACE, Judge.
 

 The Justice Administrative Commission (the JAC) petitions this court for a writ of certiorari to quash a circuit court order awarding interim compensation and costs to Terence M. Lenamon, an attorney appointed to represent the defendant in a prosecution for a capital felony. The JAC challenges the circuit court’s order because it awards compensation for Mr. Len-amon’s services at the rate of $125 per hour instead of $100 per hour. Because the circuit court departed from the essential requirements of law by approving compensation that exceeds the applicable statutory limit of $100 per hour, we grant the petition.
 

 I. THE FACTS AND PROCEDURAL BACKGROUND
 

 The case against Mr. Lenamon’s client arises out of a double homicide that occurred in Lee County. Mr. Lenamon’s client was charged with the first-degree murder of the victims. The circumstances of the prosecution were unusual in that nine defendants were charged with being involved in the alleged murders. The State filed notices of intent to seek the death penalty against several of the defendants, including Mr. Lenamon’s client. All of the defendants were indigent. Although our limited record does not so reflect, we assume that the Public Defender of the Twentieth Judicial Circuit and the Office of Criminal Conflict and Civil Regional Counsel were each appointed to represent one of the defendants. Thus the circuit court was required to find qualified private counsel to represent the remaining defendants.
 
 [1]
 

 Mr. Lenamon’s office is located in Miami, and he generally practices in Miami-Dade County. Mr. Lenamon’s name is on the registry list for court appointments in the Eleventh Judicial Circuit, but not in the Twentieth Judicial Circuit. However, Mr. Lenamon is qualified to handle cases in which the State seeks the death penalty. Because all of the qualified attorneys within the Twentieth Judicial Circuit had been appointed to represent other defendants, the circuit court found that the appointment of an attorney from outside the circuit to represent Mr. Lenamon’s client “is not only necessary, but also required in this case.” Thus the circuit court appointed Mr. Lenamon as one of two attorneys to represent the defendant. The circuit court entered the order appointing Mr. Lenamon on July 16, 2007, nunc pro tunc, June 29, 2007.
 

 Because Mr. Lenamon was not on the registry list for court-appointed counsel within the Twentieth Judicial Circuit, he entered into a nonstandard agreement with the JAC for his services in the case.
 
 [2]
 
 With respect to Mr. Lenamon’s compensation, paragraph 1 of Article III provides:
 

 Attorney shall be paid in accordance with the schedule of fees prescribed by the Florida Statutes and the General Appropriations Act in effect at the time of Attorney’s date of appointment. For appointments prior to July 1, 2007, the rates established by the local Article V Indigent Services Committee will apply to the extent those rates are or remain
 
 *1160
 
 consistent with Florida law. Attorney agrees and acknowledges that the compensation to be paid pursuant to this Agreement shall be the sole, exclusive, and full compensation to which Attorney shall be entitled for cases Attorney is appointed to pursuant to this Agreement.
 

 Thus, in accordance with the agreement, the payment for Mr. Lenamon’s services was expressly made subject to the amounts that were either authorized by or consistent with Florida law.
 

 In March 2009, approximately three months before the double-murder case was scheduled to be tried, Mr. Lenamon filed a motion for interim attorney’s fees. In his motion, Mr. Lenamon requested an award of $69,225 in fees and an additional $3937.46 in costs and expenses. Mr. Lena-mon based his fee request on 553.80 hours to be compensated at the rate of $125 per hour. Mr. Lenamon alleged that the $125 per hour rate was the prevailing rate at the time of his appointment. The JAC promptly objected to the payment of Mr. Lenamon at the $125 rate and requested a hearing. In its objection, the JAC noted that “[t]he correct hourly rate is $100.00.”
 

 The circuit court conducted a hearing on Mr. Lenamon’s motion. Mr. Lenamon argued in favor of the $125 per hour rate, and the JAC reiterated its objection. Neither Mr. Lenamon nor the JAC presented any testimony at the hearing. After hearing the parties’ arguments, the circuit court announced that it would use the rates established by the local Indigent Services Committee (ISC) in effect on the date of Mr. Lenamon’s appointment. Based on the rates adopted by the Twentieth Judicial Circuit ISC, the circuit court ruled that the correct rate was $125 per hour.
 

 II. THE CIRCUIT COURT’S ORDER
 

 After the hearing, the circuit court entered an order on Mr. Lenamon’s motion. In the order, the circuit court made the following findings:
 

 1. That the fees, costs or related expenses as set forth below are appropriate and reasonable[;] and
 

 2. That the fees, costs or related expenses are incurred as the result of representation in the case which is unusual and extraordinary and therefore merits compensation exceeding the statutory limit in accordance with the
 
 Makemson v. Martin County
 
 [,] 491 So.2d 1109 (Fla.1986)[J line of cases.
 

 Based on these findings, the circuit court approved the requested fees at the $125 per hour rate. The circuit court also approved the costs requested by Mr. Lena-mon. Based on these findings, the circuit court ordered the JAC to pay eighty percent of the fees and all of the costs to Mr. Lenamon. Finally, the circuit court directed the JAC to withhold the remaining twenty percent of the fees until the final billing in the case.
 

 The JAC filed a motion for reconsideration of the order and outlined in detail the basis for its objection to payment at the $125 per hour rate. The circuit court denied the JAC’s motion without explanation. This petition for certiorari followed.
 

 III. THE PARTIES’ ARGUMENTS
 

 The JAC argues that the circuit court’s order departs from the essential requirements of law by approving compensation for Mr. Lenamon at an hourly rate that exceeds the maximum hourly rate established by law. The JAC points out that in accordance with section 27.5304(12)(d), Florida Statutes (2007), the hourly rate payable to a court-appointed attorney in a capital case may not exceed $100 per hour.
 

 
 *1161
 
 In response, Mr. Lenamon makes two points.
 
 [3]
 
 First, he contends that the applicable rate for his services is the $125 per hour rate previously established by the local ISC. Second, Mr. Lenamon argues that payment of the $125 per hour rate is necessary to ensure adequate representation for the indigent defendant. We will consider the parties’ arguments below. However, some understanding of Florida law pertaining to the method of calculating the rates payable to court-appointed counsel is essential to an understanding of the parties’ arguments. Thus we will first summarize the pertinent legal background.
 

 IV. THE LEGAL BACKGROUND
 

 A. The Indigent Services Committees
 

 Mr. Lenamon’s appointment to this case occurred at a time when the manner of determining the compensation rates for the services of court-appointed attorneys was in transition from one system to another. Before the enactment of chapter 2007-62, Laws of Florida (the Act), each judicial circuit was required to establish a “circuit Article V indigent services committee.” § 27.42(1), Fla. Stat. (2006). The ISC’s responsibilities included: (1) “managing] the appointment and compensation of court-appointed counsel within [the judicial] circuit,” (2) “set[ting] the compensation rates of due process service providers in cases [when] the court has appointed counsel or declared a person indigent for costs,” and (3) maintaining a registry of attorneys available for appointment pursuant to section 27.40. § 27.42(2)(a)-(b). Most pertinent to this case, each ISC was required to “develop a schedule of standard fees and expense allowances for the categories of cases specified in s. 27.5304, consistent with the overall compensation rates in that section and within the amount of appropriated funds allocated by the Justice Administrative Commission to the circuit for this purpose.” § 27.42(2)(c). Thus, under the ISC system, each judicial circuit within the state had a limited degree of autonomy in setting compensation rates for court-appointed counsel in accordance with local conditions.
 

 B. The Adoption of a Uniform Statewide System
 

 In 2007, the legislature adopted the Act. The Act substantially changed the manner of determining compensation rates for court-appointed counsel. First, the Act repealed section 27.42, relating to the Article V indigent services committees, effective October 1, 2007. Ch. 2007-62, § 30, Laws of Fla. Thus the ISCs were abolished. Second, the Act established a new flat fee system for compensating court-appointed counsel in a variety of matters. Ch. 2007-62, § 11, Laws of Fla. One of the Act’s effects is to standardize rates for court-appointed counsel throughout the state. Under the amendments made to section 27.5304 by the Act, the flat fee payable for representing an accused in a capital case at the trial level is $15,000.
 
 [4]
 
 § 27.5304(5)(a)(4), Fla. Stat. (2007).
 

 The Act added a new subsection (12) to section 27.5304. Ch. 2007-62 § 11, Laws of Fla. Subsection (12) details the circumstances and procedures governing pay
 
 *1162
 
 ment to court-appointed counsel of amounts exceeding the new flat fees. This new subsection begins with an acknowledgment by the legislature “that on rare occasions an attorney may receive a case that requires extraordinary and unusual effort.” § 27.5304(12). In such a case, subsection (12)(d) prescribes the analysis required to determine the amount of counsel’s fee:
 

 If the chief judge or designee finds that counsel has proved by competent and substantial evidence that the case required extraordinary and unusual efforts, the chief judge or designee shall order the compensation to be paid to the attorney at a percentage above the flat fee rate, depending on the extent of the unusual and extraordinary effort required. The percentage shall be only the rate necessary to ensure that the fees paid are not confiscatory under common law. The percentage may not exceed 200 percent of the established flat fee, absent a specific finding that 200 percent of the flat fee in the ease would be confiscatory. If the chief judge or designee determines that 200 percent of the flat fee would be confiscatory, he or she shall order the amount of compensation
 
 using an hourly rate not to exceed
 
 $75 per hour for a noncapital case and
 
 $100 per hour for a capital case.
 
 However, the compensation calculated by using the hourly rate shall be only that amount necessary to ensure that the total fees paid are not confiscatory.
 

 § 27.5304(12)(d) (emphasis added). Thus, when an attorney requests a fee exceeding the applicable flat fee, subsection (12)(d) requires the chief judge or designee to conduct an analysis that may require two steps.
 

 In the first step of the requisite analysis, the chief judge or designee must determine whether the case required “extraordinary and unusual efforts.” § 27.5304(12)(d). If the chief judge or designee makes such a finding, then he or she may authorize compensation in an amount up to 200 percent of the applicable flat fee. Upon a finding of extraordinary and unusual efforts in a capital case such as this one, the chief judge or designee may authorize compensation up to 200 percent of $15,000, or $30,000. If payment at the enhanced percentage of the applicable flat fee is not confiscatory, then the analysis stops at the first step. However, if the chief judge or designee finds that payment of 200 percent of the applicable flat fee would be so inadequate as to be confiscatory of counsel’s time and talents, then the analysis proceeds to the second step. In the second step of the analysis, the chief judge or designee must order compensation at an hourly rate not to exceed $75 per hour for a noncapital case and $100 per hour for a capital case. However, payment at the applicable hourly rate is not to exceed an amount necessary to ensure that the total fee for counsel’s services is not confiscatory. Thus in a capital case, if the chief judge or designee reaches the second step of the analysis by finding that the payment of $30,000 would be confiscatory, the applicable hourly rate payable to ensure that the total fees paid are not confiscatory is $100.
 

 Y. DISCUSSION
 

 The JAC’s position is relatively straightforward. It relies on section 27.5304(12)(d) as setting the maximum hourly rate payable to court-appointed counsel in a capital case at $100 per hour. In response, Mr. Lenamon contends that section 27.5304(12)(d) is not controlling. Accordingly, we turn now to a consideration of Mr. Lenamon’s two separate arguments that the maximum rate fixed by the
 
 *1163
 
 statute does not control the amount payable for his services in this matter.
 

 A. The Applicability of the Local ISC Rate
 

 We first consider Mr. Lenamon’s argument that the applicable hourly rate for his services on June 29, 2007, the effective date of his appointment, was controlled by the rates established by the Twentieth Judicial Circuit ISC. Mr. Lenamon’s appointment was effective at the close of the 2006-2007 fiscal year. During the preceding 2005-2006 fiscal year, the rate established by the Twentieth Judicial Circuit ISC for “capital cases/death penalty” was “$3,500.00 per case up to 20 hours; thereafter, $100 per hour up to the statutory maximum.” On August 14, 2006, the Twentieth Judicial Circuit ISC voted to increase the hourly rate applicable to “death penalty/capital cases” to $125 per hour. However, the ISC specifically noted that this amendment was “subject to the JAC’s current rate-freeze.” The effect of the rate freeze was to require fees for the 2006-2007 fiscal year to be paid at a rate not to exceed the rate established for the 2005-2006 fiscal year.
 
 [5]
 
 Thus the applicable rate for capital cases in the Twentieth Judicial Circuit for the 2006-2007 fiscal year was $100 per hour.
 

 Mr. Lenamon’s appointment was effective on June 29, 2007, during the 2006-2007 fiscal year. Mr. Lenamon argues that the rate freeze expired on June 30, 2007, at which time the ISC rate of $125 per hour went into effect. Mr. Lenamon continues his argument as follows:
 

 The trial court recognized, as did the ISC, that the [rate] increase was applicable to payments after June 30, 2007. Payments after that date would be at [the] adopted rate of $125 per hour. References to the “current” rate freeze and the current economic hardships clearly indicated that the rate was to go into [e]ffect after the rate freeze was lifted.
 

 We disagree. Mr. Lenamon’s argument ignores the impact of subsection (12)(d) of section 27.5304.
 

 The new subsection (12) in section 27.5304 became effective on May 24, 2007.
 
 [6]
 
 Thus the effective date of subsection (12) predates Mr. Lenamon’s appointment by approximately five weeks. Accordingly, subsection (12)(d) controls the hourly rate payable for Mr. Lenamon’s services. The hourly compensation rate prescribed in the statute is “not to exceed ... $100 per hour for a capital case.” § 27.5304(12)(d). It follows that the maximum rate payable to Mr. Lenamon for his services on behalf of the defendant is $100 per hour, not $125 per hour.
 

 Before leaving Mr. Lenamon’s first argument, we note that there is a technical deficiency in the circuit court’s order. The circuit court omitted to document the second step of the analysis required by subsection (12)(d) before awarding fees to Mr. Lenamon at an hourly rate instead of based on the applicable flat fee. The circuit court properly conducted the first step of the analysis by finding that the case required unusual and extraordinary efforts
 
 *1164
 
 by Mr. Lenamon. Based on this finding, the circuit court could exceed the applicable $15,000 flat fee for capital cases by awarding compensation up to 200 percent of the flat fee, or $30,000. Of course, the interim compensation actually approved substantially exceeded this amount. Nevertheless, the circuit court did not make a finding that compensation limited to 200 percent of the flat fee would be confiscatory of Mr. Lenamon’s time and talents. Therefore, to the extent that the order awards compensation to Mr. Lenamon exceeding $30,000, it is deficient. However, upon reviewing the transcript of the fee hearing, we have a firm conviction that the experienced circuit judge would have made the necessary finding if either of the parties had brought the matter to his attention. More important, the JAC does not challenge the award to Mr. Lenamon on this basis. The JAC’s only objection is to the amount of the hourly rate used to calculate the fee award.
 

 B. Ensuring Adequate Representation for the Defendant
 

 In his second point, Mr. Lenamon argues that it was necessary for the circuit court to exceed the $100 per hour rate to ensure adequate representation for the indigent defendant in this capital murder prosecution. Mr. Lenamon correctly notes that the circuit court had exhausted all avenues to appoint qualified counsel from within the Twentieth Judicial Circuit. Thus the circuit court found it necessary to locate an attorney from outside the circuit in order to obtain “death-qualified” counsel for the defendant. Mr. Lenamon concludes that these unusual factors made it appropriate to pay the $125 per hour rate adopted in both the Eleventh Judicial Circuit and the Twentieth Judicial Circuit, “even if the local ISC rate was subject to administrative restraint.”
 

 In support of this argument, Mr. Lena-mon relies on the case of
 
 Makemson v. Martin County,
 
 491 So.2d 1109 (Fla.1986), and its progeny.
 
 [7]
 
 However, the issue before the Supreme Court of Florida in
 
 Mak-emson
 
 was substantially different from the issue presented here. The
 
 Makemson
 
 court held that a trial court could exceed the maximum capped rates established by statute in order to ensure adequate representation for the accused.
 
 Id.
 
 at 1112.
 
 Makemson
 
 did not address the issue of exceeding hourly compensation rates established by statute.
 

 Here, the interim fee awarded to Mr. Lenamon substantially exceeds the flat rate established by section 27.5304(5). The JAC’s objection to the fee awarded is not that it exceeds the flat rate of $15,000, or even that the fee awarded exceeds 200 percent of the flat rate. Instead, the JAC’s objection is that the hourly rate used to calculate the interim fee exceeds the hourly rate prescribed in the statute.
 
 Makemson
 
 and its progeny do not provide support for using an hourly rate in excess of the authorized hourly rate to calculate counsel’s fee.
 

 There are two additional difficulties with Mr. Lenamon’s reliance on
 
 Makemson
 
 and its progeny to support the $125 per hour rate. First, the hearing in the circuit court at which the fee award was made was nonevidentiary. Mr. Lenamon did not present any evidence that it was necessary to pay an attorney an hourly rate in excess of the authorized rate in order to obtain qualified counsel to represent the defendant. Moreover, the circuit court made no such finding in its order.
 
 Cf.
 
 
 *1165
 

 Hagopian v. Justice Admin. Comm’n,
 
 18 So.3d 625 (Fla. 2d DCA 2009) (discussing a trial court order entered after an eviden-tiary hearing finding section 27.5304 unconstitutional as applied in a complex, multidefendant, racketeering and conspiracy prosecution and authorizing payment for appointed counsel at an hourly rate of $110 per hour instead of $75 per hour). In light of the absence of such evidence and appropriate findings of fact by the circuit court, we need not decide if a trial court could authorize payment to court-appointed counsel at a rate in excess of the authorized hourly rate to ensure adequate representation for the accused.
 

 Second, Mr. Lenamon voluntarily accepted the appointment and signed a contract with the JAC. Mr. Lenamon’s contract with the JAC limits his compensation in accordance with the schedule of fees in effect at the time of his appointment. As we have seen, section 27.5304(12)(d) provides that payments to an attorney in a capital case made at an hourly rate are not to exceed $100 per hour. Accordingly, Mr. Lenamon is not entitled to payment at a rate greater than the rate he agreed to accept by contract.
 
 See Fla. Dep’t of Fin. Servs. v. Freeman,
 
 921 So.2d 598, 607-08 (Fla.2006) (Cantero, J., concurring);
 
 Hillsborough County v. Unterberger,
 
 534 So.2d 838, 841 (Fla. 2d DCA 1988);
 
 Sheppard & White, P.A. v. City of Jacksonville,
 
 751 So.2d 731, 733-36 (Fla. 1st DCA 2000),
 
 approved,
 
 827 So.2d 925 (Fla.2002).
 

 VI. CONCLUSION
 

 For the reasons stated above, the circuit court departed from the essential requirements of law by awarding compensation to Mr. Lenamon on the basis of an hourly rate that exceeds the maximum hourly rate authorized by section 27.5304(12)(d). The proper method of computing the interim fee to be awarded to Mr. Lenamon is to multiply the number of his compensable hours by the capital felony rate of $100 per hour.
 
 See Swartz v. Bd. of County Comm’rs,
 
 842 So.2d 980, 982 (Fla. 2d DCA 2003);
 
 Bd. of County Comm’rs v. Lopez,
 
 518 So.2d 372, 373 (Fla. 2d DCA 1987). Thus we grant the petition and quash the circuit court’s order to the extent that it used an incorrect hourly rate to calculate the interim fee to be awarded to Mr. Lenamon.
 

 Petition granted and order quashed in part.
 

 LaROSE and KHOUZAM, JJ., Concur.
 

 [1]
 

 . Florida Rule of Criminal Procedure 3.112 imposes minimum standards for attorneys in capital cases.
 

 [2]
 

 . The JAC form contract is titled “NonStandard Agreement for a Single Court Appointment for Attorney Services in the
 
 20th
 
 Judicial Circuit.” The contract bears the designation: “Eff. 7-1-05/Rev. 6-20-07, 6-11-08 & 2-19-09.”
 

 [3]
 

 . Mr. Lenamon also argues that the $125 per hour rate was fair and reasonable in light of the exceptional circumstances present in this case. We do not doubt that the $125 per hour rate approved in the circuit court's order is fair and reasonable. However, the question before us is whether payment at a rate exceeding $100 per hour is authorized by law, not whether it is fair and reasonable.
 

 [4]
 

 . A “capital case” is defined as “any offense for which the potential sentence is death and the state has not waived seeking the death penalty.” § 27.5304(5)(a)(4), Fla. Stat. (2007).
 

 [5]
 

 . The rate freeze appears in the Appropriations Bill. It provides: "The [JAC] shall pay all legal fees and due process costs for the 2006-2007 fiscal year at the rate not to exceed the amount set by the circuit Article V indigent services committee for the 2005-2006 fiscal year.” Ch. 2006-25, § 4, line 876, Laws of Fla.
 

 [6]
 

 .
 
 See
 
 ch. 2007-62, § 34, Laws of Fla. ("Except as otherwise expressly provided in this act, this act shall take effect upon becoming a law.”). Because section 11 contains no internal effective date, section 34 applies. Chapter 2007-62 was signed by the Governor on May 24, 2007, and filed with the Secretary of State on the same day.
 

 [7]
 

 .
 
 See, e.g., Maas v. Olive,
 
 992 So.2d 196 (Fla.2008);
 
 Fla. Dep’t of Fin. Servs. v. Freeman,
 
 921 So.2d 598 (Fla.2006);
 
 Olive v. Maas,
 
 811 So.2d 644 (Fla.2002);
 
 Remeta v. State,
 
 559 So.2d 1132 (Fla.1990);
 
 White v. Bd. of County Comm’rs,
 
 537 So.2d 1376 (Fla.1989).