WOLF, J.
Mark Olive appeals from a final order dismissing with prejudice his three count amended complaint seeking a declaration that the statute governing the statewide registry of private attorneys available for court appointment to represent death row inmates in postconviction proceedings (Registry Act) is unconstitutional. We reverse and remand to the trial court for further proceedings.
The trial court essentially gave three reasons for dismissing Olive’s amended complaint. First, the trial court determined that there was no actual justiciable controversy between the parties because the Registry Act was previously held constitutional by the supreme court in Olive v. Maas, 811 So.2d 644 (Fla.2002) (Olive I). Second, the trial court concluded that Olive lacked standing to challenge the constitutionality of the Registry Act on grounds that it impermissibly interfered with a Florida death row inmate’s state constitutional right to counsel in postconviction relief proceedings. Third, the trial court found that Olive’s amended complaint violated rule 1.110(b) of the Florida Rules of Civil Procedure because it failed to contain a short and plain statement of the ultimate facts demonstrating Olive’s entitlement to relief, and it had appended to it various unnecessary exhibits.
We reject each of the conclusions reached by the trial court. First, the amended complaint presented an actual justiciable controversy between the parties because it raised issues not decided by the supreme court in Olive I. Second, based on the supreme court’s analysis of standing in Olive I, Olive clearly had standing to raise the issue of whether the Registry Act im-permissibly interfered with a Florida death row inmate’s state constitutional right to counsel in postconviction relief proceedings. Third, the amended complaint complied with the Florida Rules of Civil Procedure.
FACTS AND PROCEDURAL HISTORY
This case, while generally involving the same Registry Act at issue in Olive I, centers around section 27.7002, Florida Statutes, which was not a part of the Registry Act when the supreme court decided Olive I.[1] Section 27.7002 provides in pertinent part as follows:
(3) No provision of this chapter shall be construed to generate any right on behalf of any attorney appointed pursuant to s. 27.710, or seeking appointment pursuant to s. 27.710, to be compensated above the amounts provided in s. 27.711.
(4) No attorney may be appointed, at state expense, to represent any defendant in collateral legal proceedings except as expressly authorized in this chapter.
(5) The use of state funds for compensation of counsel appointed pursuant to s. 27.710 above the amounts set forth in s. 27.711 is not authorized.
*840 (6) The executive director of the Commission on Capital Cases is authorized to permanently remove from the registry of attorneys provided in ss. 27.710 and 27.711 any attorney who seeks compensation for services above the amounts provided in s. 27.711.
(7) Any attorney who notifies any court, judge, state attorney, the Attorney General, or the executive director of the Commission on Capital Cases, that he or she cannot provide adequate or proper representation under the terms and conditions set forth in s. 27.711 shall be permanently disqualified from any attorney registry created under this chapter unless good cause arises after a change in circumstances.
According to the allegations set forth in the amended complaint, Olive is a Leon County resident who has been a member of The Florida Bar since 1986. He maintains an active practice in both the state courts of Florida and the federal courts, including the United States Court of Appeals for the Eleventh Circuit and the United States Supreme Court. The amended complaint specifically alleged that Olive “specializes in capital trial and capital post-conviction representation.” It also alleged that Olive is “listed among counsel eligible for appointment to such cases,” pursuant to the provisions of the Registry Act, and “desires to continue to be so listed.” Olive currently represents death row inmate Jacob J. Dougan, Jr. on a pro bono basis in capital postconviction proceedings pending in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida. It is clear from the allegations in the amended complaint (i.e., the case number for Dougan’s case) that Dougan was originally charged in 1974 for the homicide for which he was convicted and sentenced to death. The amended complaint asserted that Olive has represented Dougan for six years, “believes he has the constitutional right under Florida law to seek compensation in excess of the capped fee schedule set forth in the Registry Act,” and were it not for the restrictions imposed by the Registry Act he would enter into a contract with the state as registry counsel for Dougan.
Roger Maas is the Executive Director of the Commission on Capital Cases (Commission) located in Leon County, Florida. The amended complaint alleged that in his capacity as Executive Director of the Commission, Maas is “required to maintain, and does maintain, a list of attorneys in private practice who are eligible for appointment to post-conviction cases.” The amended complaint asserted that if Olive seeks compensation as a registry attorney in excess of the capped fee schedule set forth in the Registry Act, or asserts that he cannot provide adequate or proper representation as a registry attorney under the terms and conditions of the Registry Act (or both), Maas will be “obligated” to remove Olive permanently from the list of registry attorneys.
Tom Gallagher is the Chief Financial Officer of the State of Florida (CFO), and in that capacity he serves as the head of the Florida Department of Financial Services in Leon County, Florida. The amended complaint alleged that in his capacity as CFO Gallagher developed the form contract offered to registry attorneys in connection with their postconviction representation of death row inmates pursuant to the Registry Act, he functions as the contract manager, he enters into the contracts with the registry attorneys on behalf of the state, and he enforces the terms and conditions of those contracts once entered into. The amended complaint alleged that Gallagher submitted a Registry Act contract to Olive in connection with *841 Olive’s representation of Dougan, and he demanded that Olive sign it.
In Count I of the amended complaint, Olive sought a “declaration that the Registry Act and [form contract developed by Gallagher] constitute an inflexible imposition of statutory minimum fees and as such are an unconstitutional curtailment of the courts’ inherent power under Article V, Florida Constitution, to ensure adequate representation in capital cases.” Olive specifically sought a declaration in this count “that he is permitted to seek, and that a trial court has the inherent authority to award, compensation in ... addition to the caps set forth in Chapter 27 at each stage of the representation, of a death-sentenced individual and at any other time throughout the course of the representation under the Registry Act and [contract], without suffering the penalties directed by section 27.7002, Florida Statutes, for doing so.” (Emphasis added).
In Count II of the amended complaint, Olive sought a “declaration that the Florida state trial courts have the inherent power to ensure adequate representation of death row inmates under Article V of the Florida Constitution, that the Registry Act and [contract] are an unconstitutional exercise of state legislative power, and that the Registry Act and [contract] violate the separation of powers doctrine of Article II, section 3, Florida Constitution.”
In Count III of the amended complaint, Olive sought a “declaration that death row inmates of the State of Florida have the constitutional right to effective assistance of counsel under the Declaration of Rights of the Florida Constitution.” Olive specifically alleged that the asserted constitutional right arose from sections 16 (right to counsel), 9 (due process), 2 (equal protection), 13 (habeas corpus), and 17 (cruel and unusual punishment) of Article I of the Florida Constitution. Olive also sought a “declaration that the Registry Act is an unconstitutional exercise of State legislative power and violative of each above-referenced section of the Declaration of Rights of the Florida Constitution in that the Registry Act and [contract] impermis-sibly interfere with the constitutional right of death row inmates under the Florida Constitution to effective assistance of counsel.”
ANALYSIS
First, we disagree with the trial court that the constitutional challenges to the Registry Act, raised in the amended complaint in this case were decided by the supreme court in Olive I. The challenges to the Registry Act raised in the instant case, while related to the challenges at issue in' Olive I, are distinct from those challenges. In Olive I, the supreme court was asked to address the constitutionality of the capped fee schedule in the Registry Act. See Olive I, 811 So.2d at 647-48. The supreme court upheld the challenged. fee schedule by recognizing that a trial court has the inherent authority to exceed the fee caps in the Registry Act based on the facts and circumstances in a particular case. See id. at 654. In contrast, the instant case deals with the constitutionality of the Registry Act in light of the sanctions outlined in section 27.7002 that may be imposed if an attorney requests a fee in excess of the caps as specifically authorized by Olive I. This issue was not dealt with in Olive I, and it is ripe for adjudication in light of the Legislature’s enactment of section 27.7002 immediately after the supreme court’s decision in Olive I.
Second, a detailed look at the supreme court’s decision in Olive I leads us to conclude that Olive clearly has standing to raise the constitutional challenges to the Registry Act set forth in the amended complaint. In 1999, Olive initiated his first *842 declaratory relief action challenging the validity of the Registry Act. See Olive I, 811 So.2d at 646. In that action, Olive named as defendants Maas, in his official capacity as Executive Director of the Commission on Capital Cases, and Robert F. Milligan, in his official capacity as Comptroller for the State of Florida. See id. at 646-47. The facts underlying that action were that Olive was on the list of private attorneys available to represent death row inmates in postconviction proceedings; he had been appointed by a state trial court to represent death row inmate Anthony Mungin; when he refused to sign the Registry Act contract tendered to him by Maas, Maas wrote to the trial court judge in the Mungin case suggesting that another attorney be appointed to represent Mungin and tendered a list of available registry counsel to the trial court judge which did not include Olive’s name; and the trial court judge in the Mungin case subsequently revoked Olive’s appointment to represent Mungin, indicating that he would appoint a different attorney in Olive’s place. See id. at 646. In this prior declaratory relief action, Olive specifically sought a declaration in Count I of his complaint that strict adherence to the attorney’s fees caps set forth in the Registry Act would unconstitutionally curtail the trial court’s inherent authority to ensure adequate representation for death row inmates in capital postconviction proceedings. See id. at 647. Maas and Miliigan filed motions to dismiss the declaratory relief action on grounds that “Olive lacked standing to challenge the provisions of [the Registry Act], or the contract because ‘he had no contract, no client and no case to pursue,’ ” and on grounds that “the claims were entirely speculative and not based on a present controversy.” Id. at 646.
On review in the supreme court following the trial court’s entry of summary final judgment in favor of Maas and Milligan on the claim for declaratory relief set forth in Count I of the complaint, the supreme court characterized Olive’s claim in that count as asking for a determination as to “whether the capped fee schedule in the standard contract is void because it interferes with a defendant’s right to the effective assistance of counsel.” Id. at 647-48. Before reaching the merits of Olive’s argument, the supreme court rejected the claims that Olive lacked standing to bring the request for declaratory relief stated in Count I of the complaint in that case and the contention that the claim presented no actual controversy between the parties. See id. at 648. In reaching these conclusions, the supreme court reasoned as follows:
Although it is true that Olive never actually signed the contract, he requested that he be placed on the registry, accomplished all the necessary steps to be placed on the list, and was in fact included on the list. Olive was appointed to provide representation and began performing his duties as counsel to Mr. Mungin, even initiating a meeting with the client. It was then demanded that he execute a standard contract that contained the provisions which Olive has challenged in this action. Olive never declined his appointment to represent Mungin; he simply brought the legal issues associated with the contract to the attention of the trial court. At the time the trial court removed him as counsel, Olive was attempting to both represent Mr. Mungin and to resolve the serious legal issues presented by the contract submitted to him by Mr. Maas at the same time. To say that Olive, a registry attorney, who simply stopped short of signing the contract, lacks standing to seek a declaratory judgment is to narrow the proper interpretation which has been consistently given to the *843 Declaratory Judgment Act. Given his status as a registry attorney, his appointment, the demand for execution of the objectionable form contract, and the need for expeditious resolution of the issues raised in the complaint below, we conclude that the trial court did not step beyond its jurisdiction in entering declaratory relief....
Id. at 649-50 (footnotes omitted).
Relying on a series of cases—Makemson v. Martin County, 491 So.2d 1109 (Fla.1986); White v. Board of County Commissioners of Pinellas County, 537 So.2d 1376 (Fla.1989); and Remeta v. State, 559 So.2d 1132 (Fla.1990)—in which the supreme court had held statutory maximum fees to be unconstitutional when inflexibly imposed in cases involving unusual or extraordinary circumstances, as well as concessions made by Maas and Milligan during oral argument in the case, see Olive, 811 So.2d at 651-53, the supreme court held in Olive I that even though the specific provisions of the Registry Act seemed to indicate an inflexibility to the fee caps, “trial courts are authorized to grant fees in excess of the statutory schedule where extraordinary or unusual circumstances exist in capital collateral cases.” Id. at 653-54. Thus, the supreme court explained, “by accepting an appointment, a registry attorney is not forever foreclosed from seeking compensation should he or she establish that, given the facts and circumstances of a particular case, compensation within the statutory cap would be confiscatory of his or her time, energy and talent and violate the principles outlined in Makemson and its progeny.” Id. at 654.
In light of the foregoing, it is difficult to see how the facts as alleged by Olive in the amended complaint in this case did not sufficiently support both his standing to seek the declarations requested in the amended complaint and the existence of an actual controversy between the parties with regard to the declarations sought concerning the constitutionality of the Registry Act as amended in 2002. As Olive has argued in this appeal, the facts in this case supporting standing are not materially different from the facts in Olive I, and in fact they are more supportive of the existence of Olive’s standing to challenge the validity of the Registry Act as amended in 2002 and an actual controversy between the parties concerning the validity of the 2002 version of the statute than were the facts at issue in Olive I. In this case, unlike the facts underlying the declaratory judgment action in Olive I, Olive continues to actually represent a death row inmate in postconviction proceedings pursuant to a trial court’s order of appointment.[2]
Third, the trial court determined in the order on review that the third count of the amended complaint did not present a justiciable controversy because there is no constitutional right to counsel in capital postconviction relief proceedings. Because we have determined that there is enough confusion in the law in Florida on this issue to raise a question as to the existence of such a right under the Florida Constitution, we conclude that the trial court erred in dismissing the third count of the amended complaint on grounds that it failed to present a justiciable controversy.
*844 The confusion in the law of Florida on this question was expressed in a lengthy special concurrence by Justice Anstead in Arbelaez v. Butterworth, 738 So.2d 326 (Fla.1999). In that opinion, Justice An-stead indicated that the supreme court should “formally acknowledge” the existence of a right to counsel in capital post-conviction relief proceedings under the specific provisions of the Florida Constitution relied on by Olive in his amended complaint in this case. See Arbelaez, 738 So.2d at 327-32 (Anstead, J., specially concurring). In reaching this conclusion, Justice Amstead reviewed the history of the provision of capital postconviction counsel up to that point in time in Florida; the chronic inadequacy of funding of the state-created right to capital postconviction counsel in Florida; the results of the same study by The Spangenberg Group discussed in the letter appended to Olive’s initial complaint in this case; the supreme court’s recognition of a limited due process right to postconviction counsel in Graham v. State, 372 So.2d 1363 (Fla.1979); the supreme court’s consistent “refus[al]” to allow the execution of death row inmates in the absence of record evidence that the inmates had been provided meaningful postconviction review with the assistance of postconviction counsel; and the recognition of a constitutional right to capital postconviction counsel in other states. See Arbelaez, 738 So.2d at 327-31. Justice Anstead concluded that the time had come to formally recognize what he indicated the supreme court had already implicitly determined: that a state constitutional right to capital postconviction counsel existed and was necessary to ensure the integrity of the capital postconviction process. See id. at 331-32. In discussing the “ambiguous ... signal” regarding the right to capital postconviction counsel given by the supreme court in Graham, Justice Anstead noted the irony that in “no case” had counsel actually been appointed to represent a death row inmate pursuant to the limited right to postconviction counsel recognized in that case. See id. at 329-30.
Thus, while it is abundantly clear that there is no federal constitutional right to the effective assistance of capital postcon-viction counsel,[3] the ambiguity that presently exists in the law concerning whether there is a state constitutional right to the effective assistance of capital postconviction counsel in light of the decision in Graham and Justice Anstead’s specially concurring opinion in Arbelaez, as well as other supreme court pronouncements[4] together with the fact that the supreme court itself in Graham allowed attorneys whose client had already been executed[5] to argue for the recognition of a constitutional right to capital postconviction coun *845 sel at state expense, all appear to support the conclusion that the facts as alleged in the amended complaint support the existence of Olive’s standing to seek a declaration that a death row inmate has a state constitutional right to the effective assistance of postconviction counsel and that the Registry Act unconstitutionally interferes with that right.
Finally, we conclude that the trial court abused its discretion when it determined that the amended complaint should be dismissed with prejudice on grounds that it did not comply with the rules of civil procedure. In Florida National Organization for Women, Inc. v. State, 832 So.2d 911 (Fla. 1st DCA 2002), this court held that a trial court abused its discretion by dismissing a second amended complaint for declaratory relief with prejudice on grounds that the plaintiffs had failed to comply with a prior order of the court requiring them to “concisely” allege the facts supporting the entitlement to relief. See id. at 913-14. This court held that the trial court in that case should not have dismissed the plaintiffs’ complaint without specifically addressing the factors set forth in Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993), for determining when a dismissal with prejudice for failure to comply with a previous order of the court was warranted. See Florida NOW, 832 So.2d at 914-15. This court noted that the factors set forth in Kozel were: “1) whether the attorney’s disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2) whether the attorney has been previously sanctioned; 3) whether the client was personally involved in the act of disobedience; 4) whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; 5) whether the attorney offered reasonable justification for noncompliance; and 6) whether the delay created significant problems of judicial administration.” Florida NOW, 832 So.2d at 914 (quoting Kozel, 629 So.2d at 818). In Kozel, the supreme court commented:
The purpose of the Florida Rules of Civil Procedure is to encourage the orderly movement of litigation.... This purpose usually can be accomplished by the imposition of a sanction that is less harsh than dismissal....
Kozel, 629 So.2d at 818.
Our review of the amended complaint and attachments reveals nothing which would impede the orderly movement of this litigation. Both the initial complaint and the amended complaint appear to have concisely raised the issues to be litigated and the attachments are supportive of the allegations set forth in those pleadings. We find that no violation of the pleading requirements set forth in the rules of civil procedure occurred.
ALLEN and BENTON, JJ., concur.

. Section 27.7002 became a part of the Registry Act on July 1, 2002. See ch. 2002-31, §§ 2, 5, at 674-75, 677, Laws of Fla.

. It is worth noting that from a review of the briefs filed in a case currently pending at the Florida Supreme Court (available on the supreme court's website) variations on the arguments made by Olive in the first two counts of his amended complaint, regarding the unconstitutionality of the Registry Act as amended in 2002, are now currently pending before the supreme court. See Dep’t of Fin. Servs. v. Freeman, No. SC04-1492.

. See Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); see also Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).

. See, e.g., In Re Amendment to Florida Rules of Criminal Procedure-Rule 3.112 Minimum Standards for Attorneys in Capital Cases, 820 So.2d 185, 188 (Fla.2002) (declining to adopt judicially-created minimum standards for postconviction counsel in capital cases "because the right to capital postconviction counsel is a statutory right”); Waterhouse v. State, 792 So.2d 1176, 1193 (Fla.2001) ("[T]his Court has repeatedly held that ineffective assistance of postconviction counsel is not a cognizable claim.”).

.The petition before the supreme court in Graham had been filed by several of the "volunteer attorneys” representing death row inmates in postconviction matters at the time, including two of the attorneys who had represented Florida death row inmate John A. Spenkelink prior to his execution on May 25, 1979. See Graham, 372 So.2d at 1364. The supreme court did not decide the petition at issue in Graham until June 22, 1979. See id. at 1363.