992 So.2d 196 (2008)
Roger R. MAAS, etc., Appellant,
v.
Mark Evan OLIVE, et al., Appellees.
Mark Evan Olive, Appellant,
v.
Roger R. Maas, etc, et al., Appellees.
Nos. SC06-835, SC06-1263.
Supreme Court of Florida.
September 25, 2008.
*198 Jeremiah M. Hawkes, Tallahassee, FL, for Appellant/Cross-Appellee.
Stephen F. Hanlon and Robin L. Rosenberg of Holland and Knight, LLP, Washington, D.C., Steven Brannock, of Holland and Knight, LLP, Tampa, FL, and Richard T. Donelan, Jr., Division of Legal Services, Department of Financial Services, Tallahassee, FL, for Appellee/Cross-Appellant.
QUINCE, C.J.
We have for review a final judgment of a Leon County trial court certified by the First District Court of Appeal as being of great public importance and requiring immediate resolution by this Court. We also have an appeal of the trial court's order involving attorney fees in a postconviction death penalty proceeding under Florida Rule of Criminal Procedure 3.851. We have jurisdiction pursuant to article V, sections 3(b)(1) and 3(b)(5) of the Florida Constitution. For the reasons explained below, we affirm the trial court's order declaring that in appropriate capital collateral cases involving extraordinary circumstances, registry attorneys may request and, upon judicial approval, receive compensation in excess of the statutory fee schedule, despite the language to the contrary *199 in section 27.7002, Florida Statutes (2007).

FACTUAL AND PROCEDURAL HISTORY
The Florida Legislature enacted sections 27.710 and 27.711 of the Florida Statutes in 1998, creating a statewide registry of attorneys who possessed certain minimum qualifications and who were willing to enter into a contract to represent defendants in capital collateral proceedings. See Ch. 98-197, §§ 3-4, at 1741-45, Laws of Fla. (codified as §§ 27.710-27.711, Fla. Stat. (1999)) (hereinafter referred to collectively as "the Registry Act"). In 1999, Mark Olive sought a determination of his legal rights under section 27.711 as to the compensation that he could claim for representing death row inmate Anthony Mungin. The Registry Act limited compensable hours and provided that the fee schedule set forth in section 27.711 was the "exclusive means of compensate[ion]." § 27.711(3), Fla. Stat. (1999). The fee schedule, including the maximum amount payable for each stage of postconviction representation, was set forth in section 27.711(4). Olive asserted that he would have to work in excess of the statutory limit in order to effectively represent Mungin. Olive sought a declaration that the strict application of the limitations in the Registry Act and the contract that registry counsel must sign[1] unconstitutionally curtailed the trial court's inherent power to ensure adequate representation of death row inmates. Olive also sought an injunction to prohibit Roger Maas, the Executive Director of the Commission on Capital Cases,[2] from excluding him from the registry.
The trial court entered summary judgment in favor of Maas as to the claim that the statutory limit curtails the courts' authority to ensure adequate representation of death row defendants. However, the trial court also enjoined Maas from excluding Olive from the registry of available attorneys. The parties cross-appealed to the First District Court of Appeal, which certified the judgment of the circuit court as being of great public importance and requiring immediate resolution by this Court.
In our review, we held that "trial courts are authorized to grant fees in excess of the statutory schedule where extraordinary or unusual circumstances exist in capital collateral cases." Olive v. Maas, 811 So.2d 644, 654 (Fla.2002) (Olive I).[3] We also remanded the case to the trial court for dissolution of the permanent injunction against Maas, based on the representation that Maas did not intend to exclude Olive from the registry list. Id. at 657.
Only weeks after we issued Olive I, the Legislature added section 27.7002 to the Registry Act. See ch.2002-31, § 2, at 674-75, Laws of Fla. This new provision provides that compensation above the amounts set forth in section 27.711 "is not authorized." § 27.7002(5), Fla. Stat. (2007). Additionally, the statute authorizes the director of the Commission on Capital Cases to permanently remove from the registry *200 any attorney who seeks fees in excess of the statutory cap and requires permanent removal of any attorney who declares that he or she cannot provide adequate or proper representation under the terms and conditions set forth in section 27.711. See id. § 27.7002(6)-(7).[4]
At that time, Olive was representing death row inmate Jacob John Dougan, Jr. in his postconviction proceedings in the Fourth Judicial Circuit Court. When the State sought to have counsel from the Capital Collateral Regional Counsel-North office appointed for Dougan, the circuit judge denied the motion, concluding that Olive should remain as counsel. The judge also ordered the Chief Financial Officer to send Olive a contract to represent Dougan pursuant to section 27.710(4) of the Registry Act. However, Olive did not sign the contract and informed the judge about the pending litigation in Olive I. When that litigation was resolved, Olive advised the judge that he could not sign the contract because of the enactment of section 27.7002. Olive has continued to represent Dougan pro bono in his postconviction proceedings.
In 2003, Olive filed a new complaint for declaratory judgment, challenging the amended Registry Act on the same grounds as he did in Olive I.[5] He sought a declaration that: (1) section 27.7002 violates the courts' inherent authority under article V of the Florida Constitution; (2) section 27.7002 violates the separation of powers provision in article II of the Florida Constitution; and (3) death row inmates have a Florida constitutional right to postconviction counsel. The trial court dismissed the amended complaint, concluding that it failed to allege a justiciable controversy because Olive I had already concluded that the courts have inherent authority to grant fees in excess of the statutory caps in extraordinary or unusual *201 cases. The trial court also found no controversy or dispute as to the removal from the registry provision because Olive did not allege that Maas is required to remove attorneys from the registry list for seeking fees in excess of the statutory limits or that Olive was in a situation that would result in his removal from the registry list. Similarly, the trial court concluded that Olive did not allege the existence of any justiciable controversy pertaining to the separation of powers issue and did not have standing to seek a judicial declaration of whether death row inmates have a Florida constitutional right to postconviction counsel. Finally, the trial court found that the amended complaint violated Florida Rule of Civil Procedure 1.110(b) because it did not contain a short and plain statement of the ultimate facts and contained too many exhibits.
Olive appealed to the First District Court of Appeal, which reversed each of the trial court's conclusions. See Olive v. Maas, 911 So.2d 837 (Fla. 1st DCA 2005) (Olive II). The First District concluded that the amended complaint presented an actual justiciable controversy between the parties because it raised issues not decided by this Court in Olive I. The First District also concluded that, based on Olive I, Olive had standing to raise the issue of whether the Registry Act impermissibly interferes with a Florida death row inmate's right to counsel in postconviction relief proceedings. Finally, the First District found that the amended complaint complied with the Florida Rules of Civil Procedure. Id. at 839. Accordingly, the First District remanded the case back to the circuit court.
On remand, the court granted summary judgment in favor of Olive on Count I, finding that section 27.7002(5) must be construed to permit the use of state funds for compensation of registry attorneys above the statutory limit in capital postconviction cases involving extraordinary circumstances upon judicial approval. Further, the court ruled that the attorneys should not suffer the penalty of permanent removal from the registry list as provided in section 27.7002(6) for seeking such compensation. The court concluded that this Court's ruling in Olive I and other controlling case law required this construction in order to preserve the constitutionality of section 27.7002. In light of this interpretation, the trial court granted summary judgment in favor of Maas on the separation of powers doctrine in count II. The court also granted summary judgment in favor of Maas on count III, the claim of a constitutional right to postconviction counsel. The trial court found no Florida constitutional right of death row inmates to effective assistance of counsel in postconviction proceedings.
Maas filed a notice of appeal on count I; Olive filed a notice of appeal on counts II and III. Both parties asked the First District to certify the appeal as a matter of great public importance requiring immediate resolution by this Court. The First District issued an order certifying the case to this Court. The parties filed a motion asking this Court to consolidate the cases and treat them as an appeal and cross-appeal. This Court granted the motion and consolidated the two cases for all appellate proceedings.

ANALYSIS
In deciding this case, we are guided by our previous decision and reasoning in Olive I. First, as we concluded in Olive I, Olive has standing to obtain a declaratory judgment of his rights under the amended Registry Act. The facts that supported Olive's standing in Olive I included: his appointment as registry counsel to represent a death-sentenced inmate in postconviction proceedings; the demand that *202 he execute the contract required by section 27.710(4), the terms of which he was challenging; and the need for expeditious resolution of issues raised in Olive's complaint below. Olive I, 811 So.2d at 650. In light of these facts, we concluded that "the trial court did not step beyond its jurisdiction in entering declaratory relief" on Olive's complaint. Id. The facts that support standing in this case are not materially different from the facts in Olive I. Additionally, in the instant case Olive has continued to represent death row inmate Dougan in his postconviction proceedings pursuant to the trial court's order of appointment, albeit Olive has represented Dougan pro bono because he has refused to sign the registry contract because of the enactment of section 27.7002. Thus, under this Court's determination that Olive had standing to seek a declaratory judgment in Olive I, he clearly has standing in the instant case.
Second, Olive I does not foreclose the instant complaint for declaratory relief. In Olive I, we held that trial courts are authorized to grant fees in excess of the statutory schedule provided in section 27.711 "where extraordinary or unusual circumstances exist in capital collateral cases," notwithstanding the statutory language that this fee schedule is "the exclusive means of compensation" for such attorneys. Id. at 654. The instant case involves section 27.7002, which provides that state funds cannot be used for compensation above the amounts set forth in section 27.711 and outlines sanctions that may be imposed on registry counsel who seek compensation in excess of the statutory schedule. Section 27.7002 was added to the Registry Act after our decision in Olive I. Thus, none of the provisions of section 27.7002 were or could have been considered in Olive I. Therefore, the amended complaint here presents a justiciable controversy for purposes of a declaratory judgment action. See Martinez v. Scanlan, 582 So.2d 1167, 1170 (Fla.1991) ("The purpose of the declaratory judgment statute is to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations....").

Section 27.7002
As noted above, the Florida Legislature amended the Registry Act shortly after we decided Olive I by adding section 27.7002. At issue in this case is the language that limits "[t]he use of state funds for compensation of counsel ... to the amounts set forth in section 27.711," the capped fee schedule, and authorizes the permanent removal from the registry of any attorney who seeks compensation above the fee schedule. § 27.7002(5)-(6), Fla. Stat. (2007). Relying on this Court's precedent, the circuit court construed these provisions to permit the use of state funds for compensation above the statutory fee schedule in appropriate cases and to permit attorneys to request such compensation when justified by unusual or extraordinary circumstances. The circuit court noted that the provisions must be construed in this manner in order to preserve the constitutionality of section 27.7002.
We agree. In a long line of cases, we have consistently held that statutory limits for compensation of counsel may not constitutionally be applied in a manner that would curtail the trial court's inherent authority to ensure adequate representation. These cases began with Makemson v. Martin County, 491 So.2d 1109 (Fla.1986), in which this Court addressed the constitutionality of a statute that set fee caps on compensation provided to attorneys who represented defendants at trial and first appeal as a matter of right. While we did *203 not find the statute unconstitutional on its face, we concluded that it could be unconstitutional when applied to curtail the court's inherent authority to ensure adequate representation of the criminally accused. Id. at 1112. As we explained in Olive I, "the Makemson decision strongly suggests that a mandatory fee cap interferes with the right to counsel in that: `(1) It creates an[ ] economic disincentive for appointed counsel to spend more than a minimum amount of time on the case; and (2) It discourages competent attorneys from agreeing to a court appointment, thereby diminishing the pool of experienced talent available to the trial court.'" Olive I, 811 So.2d at 652 (quoting Bottoson v. State, 674 So.2d 621, 626 (Fla. 1996) (Kogan, J., concurring in part and dissenting in part)).
In White v. Board of County Commissioners, 537 So.2d 1376 (Fla.1989), we reviewed a trial court order denying attorney's fees in excess of the statutory cap in a first-degree murder case. The trial court had concluded that the case was not sufficiently complex to meet the standard set forth in Makemson. We explained that "all capital cases by their very nature can be considered extraordinary and unusual and arguably justify an award of attorney's fees in excess of the current statutory maximum fee cap." Id. at 1378.
In Remeta v. State, 559 So.2d 1132 (Fla. 1990), we extended the reasoning of Makemson and White to a case involving the statutory right to counsel, as opposed to a constitutional right to counsel. In that case, a private attorney, who was appointed to represent Remeta at his executive clemency proceeding, sought fees in excess of those delineated by statute. On appeal, we rejected the State's argument that Makemson and White were inapposite because they involved the constitutional right to effective assistance of counsel. This Court explained that the statutory right to counsel in clemency proceedings for death penalty cases "necessarily carries with it the right to have effective assistance of counsel." Id. at 1135. "The appointment of counsel in any setting would be meaningless without some assurance that counsel give effective representation." Id.
Based on these cases, we concluded in Olive I that trial courts are authorized to grant fees in excess of the statutory schedule where extraordinary or unusual circumstances exist in capital collateral cases. Further, under this "as applied" analysis, "a registry attorney is not forever foreclosed from seeking compensation should he or she establish that, given the facts and circumstances of a particular case, compensation within the statutory cap would be confiscatory of his or her time, energy and talent and violate the principles outlined in Makemson and its progeny." Olive I, 811 So.2d at 654.
Maas argues that the rationale of Olive I is no longer valid because the Legislature enacted section 27.7002 to clarify its intent that the fee caps cannot be exceeded in any circumstances. While this may have been the Legislature's intent, such an interpretation of the statute would render it unconstitutional. Notwithstanding the discussion of legislative history and staff analysis related to the Registry Act in Olive I, see 811 So.2d at 653-54, that discussion was not the basis of our ultimate holding that trial courts are authorized to grant fees in excess of the statutory schedule where extraordinary or unusual circumstances exist in capital collateral cases. Instead, the decision in Olive I rests on the courts' inherent power to ensure adequate representation for death row inmates in postconviction challenges. "[The] courts have authority to do things that are absolutely essential to the performance of their judicial functions." Rose *204 v. Palm Beach County, 361 So.2d 135, 137 (Fla.1978). This authority emanates from the courts' constitutional powers in the Florida Constitution. See art. II, § 3, Fla. Const. ("The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided therein."); art. V, § 1, Fla. Const. ("The judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts."). This authority also relates to the expenditure of funds. As we explained in Rose,
The doctrine of inherent judicial power as it relates to the practice of compelling the expenditure of funds by the executive and legislative branches of government has developed as a way of responding to inaction or inadequate action that amounts to a threat to the courts' ability to make effective their jurisdiction. The doctrine exists because it is crucial to the survival of the judiciary as an independent, functioning and co-equal branch of government. The invocation of the doctrine is most compelling when the judicial function at issue is the safe-guarding of fundamental rights.
Rose, 361 So.2d at 137 (footnote omitted).
Thus, despite the enactment of section 27.7002 after we issued our opinion in Olive I, the reasoning underlying Olive I, Makemson, White, and Remeta still controls our interpretation of the statute. We agree with the trial court that section 27.7002(5) must be construed as permitting compensation in excess of the statutory fee caps where a trial court exercises its inherent authority to grant such fees in light of extraordinary circumstances in a case. In most cases, counsel's fee will not exceed the statutory cap. In fact, only in those cases where counsel requests additional compensation due to extraordinary and unusual circumstances, the trial court issues an order awarding such fees, and there is competent, substantial evidence in the record to support fees in excess of the statutory limit will the statutory caps not apply. See Fla. Dep't of Fin. Servs. v. Freeman, 921 So.2d 598 (Fla.2006) (remanding for full evidentiary hearing on whether attorney's fees in excess of statutory limit were justified). Furthermore, we also agree with the trial court that section 27.7002(6) must be construed to prohibit removing an attorney from the registry list for seeking compensation above the statutory limit in cases involving extraordinary circumstances.
In light of our interpretation of section 27.7002, we agree with the trial court that the statute does not violate the separation of powers doctrine. Finally, we affirm the trial court's grant of summary judgment in favor of Maas and the Chief Financial Officer on the claim relating to the effective assistance of counsel. As United States Supreme Court Justice Anthony Kennedy observed in his concurring opinion in Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989),
It cannot be denied that collateral relief proceedings are a central part of the review process for prisoners sentenced to death.... [A] substantial proportion of these prisoners succeed in having their death sentences vacated in habeas corpus proceedings. The complexity of our jurisprudence in this area, moreover, makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law.
Id. at 14, 109 S.Ct. 2765 (Kennedy, J., concurring in the judgment). However, "[t]he requirement of meaningful access can be satisfied in various ways" and *205 "state legislatures and prison administrators must be given `wide discretion' to select appropriate solutions." Id. Chapter 27 provides state-funded counsel for capital collateral proceedings in Florida. As long as the statutes are being interpreted and applied in a way that ensures effective and competent representation in complex and unusual capital postconviction proceedings, Florida's death row inmates are being afforded meaningful access to counsel in their collateral proceedings.

CONCLUSION
For these reasons, we conclude that in appropriate cases courts have inherent authority to grant compensation in excess of the statutory fee schedule provided in section 27.711 and attorneys may not be removed from the registry for requesting such compensation in those cases. Accordingly, we affirm the trial court's order granting summary judgment and declaring the parties' rights under the Registry Act.
It is so ordered.
ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
WELLS, J., dissents with an opinion, in which, BELL, J., and CANTERO, Senior Justice, concur.
WELLS, J., dissenting.
I cannot join the majority opinion because the Legislature has made it completely clear that there are to be no fees paid in excess of the legislatively mandated caps. § 27.7002(5), Fla. Stat. (2002). As the majority acknowledges, the Legislature made this clear in its amendment to the statute following this Court's decision in Olive v. Maas, 811 So.2d 644 (Fla.2002). I do not believe that this Court can order that fees be paid which are in direct conflict with the statutory authorization for the attorney fees.
In State ex rel. Butterworth v. Kenny, 714 So.2d 404, 407 (Fla.1998), this Court stated:
As CCRC recognized at oral argument, both the United States Supreme Court and this Court have held that defendants have no constitutional right to representation in postconviction relief proceedings.
(Emphasis added.) This case is controlling precedent. The First District in this case erred in not respecting and following that precedent. Olive v. Maas, 911 So.2d 837, 844 (Fla. 1st DCA 2005). This Court has made it clear that it does not intentionally overrule itself sub silentio. Puryear v. State, 810 So.2d 901, 905 (Fla.2002). We expressly reiterated this holding in Kokal v. State, 901 So.2d 766, 777 (Fla.2005).
The fact that there is no constitutional right to postconviction counsel distinguishes this case from White v. Board of County Commissioners, 537 So.2d 1376 (Fla. 1989), and Makemson v. Martin County, 491 So.2d 1109 (Fla.1986), both of which involved constitutionally mandated counsel. While Remeta v. State, 559 So.2d 1132 (Fla.1990), which involved clemency counsel, did not invoke constitutionally mandated counsel, at the time of the Remeta decision there was no express statutory prohibition against directing fees in excess of the statutory amount.
Since postconviction counsel in capital cases is provided by a right created by the Legislature, we have recognized the Legislature's authority in respect to that representation. Diaz v. State, 945 So.2d 1136, 1154 (Fla.) (Capital Collateral Regional Counsel not statutorily authorized to bring civil rights action), cert. denied, ___ U.S. ___, 127 S.Ct. 850, 166 L.Ed.2d 679 (2006).
I agree with the majority that it is wise and necessary policy to pay capital post-conviction *206 counsel a reasonable amount commensurate with what experienced, competent counsel are paid for similar representation in the community where the case is pending, but this can only be accomplished by a cooperative effort by the Legislaturenot by mandate of this Court. I urge the Legislature to mandate that fees be paid on that basis. I have to conclude that this decision is within the powers of the Legislature and cannot be invaded on the basis of finding that the Court has the "inherent power" to set such fees. The majority does not state and I do not know from what source that "inherent power" is derived. It is the Legislature which controls appropriations for all state services, and since there is no constitutional right to this counsel, the amount to be paid for these legal services is for the Legislature to determine. Furthermore, in this instance, the Legislature has made it completely clear that it will set the amount.
Finally, I have substantial questions about the procedures in this case. Apparently, at the time this case was filed, Mr. Olive was representing Jacob Dougan in a postconviction case pending in the Fourth Judicial Circuit in Duval County. That representation has apparently now ended, in that a final order was entered on June 22, 2007, and no appeal was taken. Although not raised by the State, I believe that issues concerning postconviction counsel in capital cases should be decided in the circuit in which the postconviction proceeding is pending. Separating a declaratory judgment from the venue where the postconviction proceeding is pending leads to confusion about the processing of the postconviction case.
In conclusion, I would reverse the decision of the circuit court and remand the case with directions that a judgment be entered declaring that attorney fees in postconviction capital cases are to be in accord with section 27.7002(5), Florida Statutes (2002).
BELL, J., and CANTERO, Senior Justice, concur.
NOTES
[1] Section 27.710(4) requires private attorneys appointed to represent capital defendants to enter into a contract with the Chief Financial Officer. The contract specifies terms and conditions of representation consistent with the statutory provisions of the Registry Act.
[2] Pursuant to section 27.710(1), the director of the Commission on Capital Cases compiles and maintains the statewide registry of attorneys.
[3] This Court found no merit to Olive's claims that the Act would compel appointed counsel to violate ethical duties to act as a zealous advocate for a death row client. Olive I, 811 So.2d at 654-55.
[4] In its entirety, section 27.7002, Florida Statutes (2007), provides:

27.7002 Limitation on collateral representation; lawyer disqualification; use of state funds for excess fees not authorized.
(1) This chapter does not create any right on behalf of any person, provided counsel pursuant to any provision of this chapter, to challenge in any form or manner the adequacy of the collateral representation provided.
(2) With respect to counsel appointed to represent defendants in collateral proceedings pursuant to ss. 27.710 and 27.711, the sole method of assuring adequacy of representation provided shall be in accordance with the provisions of s. 27.711(12).
(3) No provision of this chapter shall be construed to generate any right on behalf of any attorney appointed pursuant to s. 27.710, or seeking appointment pursuant to s. 27.710, to be compensated above the amounts provided in s. 27.711.
(4) No attorney may be appointed, at state expense, to represent any defendant in collateral legal proceedings except as expressly authorized in this chapter.
(5) The use of state funds for compensation of counsel appointed pursuant to s. 27.710 above the amounts set forth in s. 27.711 is not authorized.
(6) The executive director of the Commission on Capital Cases is authorized to permanently remove from the registry of attorneys provided in ss. 27.710 and 27.711 any attorney who seeks compensation for services above the amounts provided in s. 27.711.
(7) Any attorney who notifies any court, judge, state attorney, the Attorney General, or the executive director of the Commission on Capital Cases, that he or she cannot provide adequate or proper representation under the terms and conditions set forth in s. 27.711 shall be permanently disqualified from any attorney registry created under this chapter unless good cause arises after a change in circumstances.
[5] Olive's original complaint was dismissed without prejudice by the trial court for failure to state a cause of action and for being too long with too many exhibits. Olive filed an amended complaint that is the subject of this case.